Robert Lee WILLIAMS, Jr. *v.* STATE of Arkansas

CA CR 06-129        239 S.W.3d 44

Court of Appeals of Arkansas
Opinion delivered September 13, 2006

*Dudley & Compton*, by: *Cathleen V. Compton*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Laura Shue*, Ass't Att'y Gen., for appellee.

LARRY D. VAUGHT, Judge. Appellant Robert Lee Williams Jr. was charged with capital murder, aggravated robbery,

and residential burglary. These crimes were allegedly committed on August 5, 2004, when Robert was sixteen years old. After being criminally charged as an adult in circuit court, he filed a motion to transfer the case to the juvenile division of circuit court. Following a hearing on the matter, the circuit court denied the motion. Williams now appeals, arguing that the circuit court erred in denying his motion to transfer. We affirm.

Testimony at the hearing established that Williams (along with Kevin Barton) entered the home of Alena Tate — a seventy-four-year-old woman with Alzheimer disease — with the intention of stealing her Cadillac. During the robbery, Tate was struck in the face and then fatally shot in the neck area. Williams and Barton waited and watched Tate for about five minutes after they shot her. Williams admitted to being involved but claimed that Barton was the one who actually shot Tate. Conversely, Barton claimed that Williams was the one who shot Tate.

Williams was born July 21, 1988, and — at the time the crime was committed — he had a ninth-grade education. After testing by Dr. Paul Deyoub, it was determined that Williams's I.Q. was somewhere between sixty-five and seventy, but possibly into the seventies.[1] Dr. Deyoub concluded that Williams had no mental disease or defect, was competent to proceed to trial, had no problems understanding the criminality of his actions, and had the ability to conform his conduct to the law. Even though Dr. Deyoub found that Williams had no mental defect, Dr. Deyoub did testify that Williams's I.Q. was "borderline," meaning that Williams was functioning intellectually at a lower-than-average range. Although Williams had no juvenile record in Clark County and his parents both testified that he had been a sweet child and mostly stayed out of trouble, Williams confessed to committing a second robbery-related homicide in Nevada County just prior to the crimes at issue in this appeal.

In its consideration of Williams's motion to transfer, the circuit court found that Williams's offenses were serious; that they were committed in an aggressive, violent, and premeditated man-

---

[1] Dr. Deyoub originally found that Williams's I.Q. score was fifty-nine, but after further researching Williams's school records and prior I.Q. scores, Dr. Deyoub raised Williams's estimated I.Q. The wide range in the I.Q. estimate is due to Dr. Deyoub's conclusion that Williams was malingering and faking ignorance while taking the examinations.

ner; and that the protection of society required prosecution in the criminal division of circuit court. The court noted that personal injury and death resulted from the crime and that the level of Williams's culpability was great. The court also considered the fact that Williams had committed another capital murder only a few weeks prior to the instant offense. Finally, the court concluded — based on Dr. Deyoub's examination — that at the time of the offense Williams did not suffer from a mental disease or defect, had the capacity to form the culpable mental state required of the crime charged, and had the ability to appreciate the criminality of his conduct and also the capacity to conform his conduct "with the requirements of the law."

A defendant bears the burden of proving the necessity of a transfer from circuit court to juvenile court. *Jongewaard v. State*, 71 Ark. App. 269, 29 S.W.3d 758 (2000). Once the defendant meets this burden, the State must show countervailing evidence that warrants the circuit court retaining the case. *Id.* A circuit court's decision to retain jurisdiction of criminal charges against a juvenile must be supported by clear and convincing evidence. Ark. Code Ann. § 9-27-318(h) (Supp. 2005); *Wright v. State*, 331 Ark. 173, 959 S.W.2d 50 (1998). Clear and convincing evidence is that degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. *McClure v. State*, 328 Ark. 35, 942 S.W.2d 243 (1997). When reviewing the denial of a motion to transfer a case to juvenile court, we view the evidence in the light most favorable to the State and do not reverse unless the circuit court's decision is clearly erroneous. *Id.*

When determining whether a case should be transferred to the Juvenile Division the circuit court is compelled to consider and "make written findings on all of" the following factors:

> (1) The seriousness of the alleged offense and whether the protection of society requires prosecution as an extended juvenile jurisdiction offender or in the criminal division of circuit court;
>
> (2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;
>
> (3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;
>
> (4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;

(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against person or property, and any other previous history of antisocial behavior or patterns of physical violence;

(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile prior to the expiration of the juvenile division of circuit court's jurisdiction;

(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

(10) Any other factors deemed relevant by the judge.

Ark. Code Ann. § 9-27-318(g). Although the court must consider each of these ten factors, it is not required to give all ten factors equal weight. *Walker v. State*, 317 Ark. 274, 878 S.W.2d 374 (1994). However, following the 2003 amendments to the juvenile-transfer statute, a trial court is now required to make written findings on each of the ten factors set forth above. *See* Ark. Code Ann. § 9-27-318(h) (stating that the "court shall make written findings on all of the factors set forth in subsection (g) of this section").

At the outset we note that the trial court made written findings addressing each of the enumerated factors, save one. The trial court failed to make a written finding on factor seven, which requires the court to consider "whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile prior to the expiration of the juvenile division of circuit court's jurisdiction." However, the issue has not been raised — either below or on appeal. In reconciling the clear violation of the statutory mandate with Williams's failure to bring to the court's attention the technical inadequacy of its written order, we look to *Box v. State*, 71 Ark. App. 403, 30 S.W.3d 754 (2000). In *Box*, the appellant

argued that a 1999 amendment to the juvenile-transfer statute requiring that the court "shall make written findings" in decisions either to retain jurisdiction or transfer the case to juvenile court applied to his case and that the trial court's failure to make such a written finding amounted to reversible error. *Id*. at 406, 30 S.W.3d at 756. Our court reasoned:

> In our view, this provision can be likened to Ark. Code Ann. § 5-4-310(b)(5) (Repl. 1997), which requires that a court "shall furnish a written statement of the evidence relied upon and the reasons for revoking suspension or probation." It has been held that this right, like any other procedural right, can be waived by the failure to object. *Brandon v. State*, 300 Ark. 32, 776 S.W.2d 345 (1989); *Lockett v. State*, 271 Ark. 860, 611 S.W.2d 500 (1981); *Hawkins v. State*, 270 Ark. 1016, 607 S.W.2d 400 (Ark. App. 1980). We see no reason to apply a different rule here. A timely request or objection would have enabled the trial court to rule on the issue of whether the amendment applied and to correct whatever deficiency there may have been in the order. *See Hawkins v. State, supra*. Additionally, in *Butler v. State*, 324 Ark. 476, 922 S.W.2d 685 (1996), the appellant argued that the trial court was required to make written findings of fact to support its decision to deny a transfer to juvenile court as a matter of due process, based on the decision in *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). The supreme court declined to address the issue because there had been no objection made below, noting that even constitutional issues will not be heard for the first time on appeal. Thus, we conclude that appellant's failure to object precludes consideration of this point on appeal.

Following the sound logic of *Box*, we will not address the technical, statutory non-compliance of the trial court's order in this appeal because Williams's failure to object below precludes consideration of the issue on appeal.

On appeal Williams argues that the circuit court erred in its denial of his transfer motion because the court failed to properly weigh and consider the factors outlined in section 9-27-318(g). Specifically, Williams claims that because of his age, I.Q., immaturity and lack of sophistication, mental retardation, and ability to be rehabilitated, the circuit court's decision to refuse transfer was clearly erroneous.

■ Here, the court's ultimate conclusion to deny transfer was supported by evidence showing that Williams had great

culpability in a serious crime — homicide — and had recently committed a second homicide. Additionally, there was medical testimony that placed Williams's I.Q. in the range of sixty-five to seventy, if not higher into the seventies. Dr. Deyoub testified that Williams was competent to stand trial, had the ability to appreciate the criminality of his conduct, and possessed the capacity to conform to the requirements of the law. *See Otis v. State,* 355 Ark. 590, 142 S.W.3d 615 (2004) (affirming the circuit court's denial of Otis's motion to transfer despite evidence that defendant suffered from borderline intellectual functioning and an I.Q. of sixty-eight based on seriousness of the crime and medical testimony establishing capacity to understand and conform conduct). Finally, the fact that Williams was sixteen years old when the crime was committed, coupled with the fact that he could not remain in the juvenile division past his twenty-first birthday, would result in an extraordinarily short time period for any sort of meaningful rehabilitation.

Therefore, viewing the evidence in the light most favorable to the State, the circuit court was not clearly erroneous in denying Williams's motion to transfer to juvenile division.

Affirmed.

HART and NEAL, JJ., agree.