SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-14-90

| | | |
|---|---|---|
| | | **Opinion Delivered** October 8, 2014 |
| R. W. G. | | APPEAL FROM THE GARLAND |
| | APPELLANT | COUNTY CIRCUIT COURT |
| | | [No. CR-2013-480-I] |
| V. | | |
| | | HONORABLE JOHN HOMER |
| | | WRIGHT, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

## LARRY D. VAUGHT, Judge

Seventeen-year-old R.W.G. was charged in Garland County, Arkansas, as an accomplice to first-degree murder. R.W.G. filed a motion to transfer his case to the juvenile division of circuit court. After a juvenile-transfer hearing, the circuit court denied the motion. R.W.G. appeals, arguing that the circuit court erred in denying the motion to transfer his case to the juvenile division. We affirm.

A prosecuting attorney has the discretion to charge a juvenile sixteen years of age or older in the juvenile or criminal division of circuit court if the juvenile has allegedly engaged in conduct that, if committed by an adult, would be a felony. Ark. Code Ann. § 9-27-318(c)(1) (Repl. 2009). On the motion of the court or any party, the court in which the criminal charges have been filed shall conduct a hearing to determine whether to transfer the case to another division of circuit court having jurisdiction. Ark. Code Ann. § 9-27-318(e). The court shall order the case transferred to another division of circuit court only upon a finding by clear and

SLIP OPINION

convincing evidence that the case should be transferred. Ark. Code Ann. § 9-27-318(h)(2). Clear and convincing evidence is the degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. *Lewis v. State*, 2011 Ark. App. 691, at 2. We will not reverse a circuit court's determination of whether to transfer a case unless that decision is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Id.*

Arkansas Code Annotated section 9-27-318(g) sets forth the factors the circuit court must consider and make written findings on at a transfer hearing. Those factors are (1) the seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court; (2) whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner; (3) whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted; (4) the culpability of the juvenile, including the level of planning and participation in the alleged offense; (5) the previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence; (6) the sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult; (7) whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;

(8) whether the juvenile acted alone or was part of a group in the commission of the alleged offense; (9) written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and (10) any other factors deemed relevant by the judge. *Lewis*, 2011 Ark. App. at 691, 2–3. The circuit court does not have to give equal weight to each factor. *Id.* at 3.

At the motion-to-transfer hearing, the State presented evidence from Garland County Sheriff's Department Investigator Michael Wright that Dan Roberson, who was seventy-one years old, was abducted, robbed, and murdered on or about July 9, 2013. The State also presented evidence that R.W.G., along with two other adults, Chestly Gaston and Ethan Sallee, were responsible for the crimes. Wright testified that he interviewed R.W.G., who said that he, Gaston, and Sallee had seen Roberson picking up aluminum cans on the side of the road, when Gaston said that Roberson had a lot of money. R.W.G. stated that the group followed Roberson back to his house, jumped him, strangled him, put him in the bed of his (Roberson's) truck, drove him to a wooded area, stabbed him, and dumped his body. Wright further testified that R.W.G. provided a general description of where Roberson's body could be found. While R.W.G. told Wright that he (R.W.G.) neither killed Roberson nor witnessed the killing, he said that Gaston killed Roberson and that he (Gaston) had a knife. R.W.G. admitted that he and Sallee burned Roberson's vehicle. Wright testified that Roberson's vehicle was one of three vehicles the trio stole during the weekend. Lastly, Wright did not recall R.W.G.'s having made statements that he was threatened or coerced into participating in the crimes against Roberson.

3

Sherry Chandler testified that she was the principal at the Jessieville/Fountain Lake Alternative Learning Center (ALC) when R.W.G. was a student there on three separate occasions, beginning in his fifth-grade year. She testified that he was transferred to ALC because of attention deficit hyperactivity disorder (ADHD) and reasoning and comprehension issues in reading and math. She said that he flourished in the program but was a follower who was influenced by his peers. According to Chandler, when R.W.G. returned to traditional school, he had problems with attendance and staying out of trouble; he used vulgar language, refused to follow directions, and bullied students. She said that she felt as though the ALC had exhausted its program options with regard to R.W.G. and that he needed another program. She added, however, that she believed R.W.G. could be rehabilitated in the juvenile court system.

R.W.G.'s probation officer, Brian Reynolds, testified that in December 2012, R.W.G. was arrested for harassing a fellow student and placed on juvenile probation. Within a six-month period, Reynolds filed two affidavits in support of petitions to revoke R.W.G.'s probation—one in March 2013 for testing positive for drugs and another in May 2013 for smoking on the school bus. Reynolds further testified that R.W.G. was on probation at the time the crimes were committed against Roberson. Reynolds stated that R.W.G. was a follower and lacked the maturity to make sound adult decisions. Reynolds opined that there were rehabilitation facilities that would benefit R.W.G.

The coordinator of the juvenile division of the Public Defender Commission, Scott Tanner, testified that there are residential psychiatric programs within the juvenile system available to R.W.G. beyond his eighteenth birthday. Tanner stated that R.W.G. was a candidate

for extended juvenile jurisdiction, which would allow the circuit court to impose a juvenile sentence that would be served within the Division of Youth Services. Upon R.W.G.'s twenty-first birthday, a hearing in the circuit court would be held to determine whether rehabilitative milestones had been met or whether an adult sentence in the Arkansas Department of Correction was appropriate.

R.W.G.'s father, Robert Glover, Sr., also testified. He said that R.W.G.'s mother had seen him only twice. Glover said that he was a single dad and was often gone due to work. He added that he had not been the best role model for his son, admitting that he lost custody of R.W.G. because he (Glover) tested positive for methamphetamines. Glover said that R.W.G. had the maturity of a thirteen year old.

The circuit court denied R.W.G.'s motion to transfer, entering written findings of fact that addressed each of the factors set forth in section 9-27-318(g). On appeal, R.W.G. challenges the findings the circuit court made with regard to each of the factors, and he contends that the court clearly erred in denying the motion. He argues that there is no evidence that he, in a premeditated manner, killed Roberson; at best he was the accomplice of two adults. He denies harming Roberson and points out that he cooperated with investigators in locating Roberson's body. R.W.G. contends that he had only one prior offense of harassment, no antisocial behavior, and no prior violent offenses. He cites evidence that he was diagnosed with ADHD and lacked maturity. He also cites testimony that there were programs available within the juvenile system and that his ALC principal and probation officer opined that he could be rehabilitated within that system.

In denying the motion to transfer, the circuit court found that the crime committed against Roberson—first-degree murder—was extremely serious and that the protection of society would strongly favor, if not require, prosecution in the criminal division of circuit court. The circuit court found that the alleged offense was committed in an aggressive, premeditated, and willful manner by R.W.G., although the level of violence by him was in dispute. The circuit court noted that the crime was against a person and his property, and the culpability of R.W.G., including the level of planning and participation in the alleged offense, was substantial. The circuit court further found that R.W.G. had some history of aggressive behavior against others. The court noted that R.W.G. appeared to be on the lower end of the normal range of maturity for a person his age and that he had a history of antisocial behavior. The court found that it was undisputed that R.W.G. was part of a group that committed the murder. And while there was evidence of juvenile-system programs that might be available to R.W.G., the court found that there was no evidence as to the likelihood that these programs might prove effective for someone in his circumstances.

We hold that the circuit court properly considered all the factors in section 9-27-318(g) and that its decision to deny the motion to transfer is not clearly erroneous. The evidence demonstrated that R.W.G. willingly participated with Gaston and Sallee in the abduction, robbery, and murder of Roberson because he had "lots of money." The seriousness of the murder, coupled with evidence about how the group treated Roberson and the medical examiner's report confirming that Roberson was stabbed to death, demonstrate the aggressive, premeditated, and willful manner of the group's actions. And while R.W.G. stated that he did

not kill Roberson and did not witness the killing, he knew who did, he saw Gaston with a knife, and he was aware of where Roberson had been left to die. After Roberson was murdered, R.W.G. drove around in Roberson's vehicle, and later R.W.G., along with Sallee, burned it. Finally, there was no evidence that R.W.G. was coerced or threatened to participate in the group's activities.

Other evidence also supports the circuit court's denial of the motion to transfer. R.W.G. was enrolled in the ALC on three occasions. While he did well in this program, as soon as he was released, he reverted to poor behavior. His principal testified that there was nothing further the program had to offer R.W.G. His poor behavior led him to being on juvenile probation. Evidence showed that R.W.G. was unable to follow the rules of this program, as demonstrated by the two petitions to revoke his probation that were filed against him. Further, R.W.G. was on probation at the time of Roberson's murder. R.W.G.'s history of failing to rehabilitate supports the circuit court's finding that, while there may have been some juvenile-system programs available to R.W.G., there was no evidence as to the likelihood that these programs might prove effective for him.

For these reasons, we hold that the circuit court's findings support its decision, and the denial of R.W.G.'s motion to transfer to the juvenile division of circuit court was not clearly erroneous.

Affirmed.
GRUBER and WHITEAKER, JJ., agree.
*Kelsay Law Firm, P.A.*, by: *Ronald D. Kelsay*, for appellant.
*Dustin McDaniel*, Att'y Gen., by: *LeaAnn J. Adams*, Ass't Att'y Gen., for appellee.