
SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-14-579

| | |
|---|---|
| KHIRY DAUSHON NICHOLS<br>APPELLANT | Opinion Delivered JUNE 17, 2015 |
| V. | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT, [NO. CR-2013-1076-1] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE WILLIAM A. STOREY, JUDGE |
| | AFFIRMED |

## DAVID M. GLOVER, Judge

This is the second time this case has been before us. Appellant Khiry Nichols's counsel originally filed a motion to withdraw as counsel and a no-merit appeal from the denial of Nichols's motion to transfer his case to juvenile court; our court denied counsel's motion and ordered rebriefing as a merit appeal. *Nichols v. State*, 2015 Ark. App. 12. Counsel has now filed a merit brief, arguing that the trial court erred by refusing to transfer Nichols's case to juvenile court. We affirm.

Nichols, who was born in December 1996, was charged by felony information with being an accomplice to aggravated robbery, a Class Y felony, and being an accomplice to first-degree battery, a Class B felony. These offenses were alleged to have occurred on June 18, 2013, when Nichols was sixteen years old. He filed a motion to transfer his case to juvenile court or, in the alternative, to extended juvenile jurisdiction.

SLIP OPINION

At the hearing on Nichols's motion to transfer, Shelly Clingan, a licensed social worker employed at the Washington County Juvenile Detention Center, testified that Nichols had been referred for crisis intervention due to elevated screening scores regarding suicide, although he denied being suicidal; he was currently in therapy; he had never been disrespectful to her; he had significant family issues and trust issues, including the fact that he had no relationship with his father; and he had admitted to using marijuana regularly, as well as having experimented with prescription medications and alcohol. She testified Nichols also reported to her that he had been physically abused as a child. Clingan was concerned that Nichols was low functioning and had never had an educational evaluation to determine if he needed assistance. It was Clingan's opinion that he needed to continue with the juvenile-court program, although she acknowledged that Nichols's juvenile probation had been revoked previously because he had run away from home and had cut off his electronic-monitoring device when he ran away from home a second time.

Scott Tanner, the Juvenile Ombudsman of the Public Defender Commission, testified as to the number of dispositions available through the juvenile system and extended juvenile jurisdiction. He stated that there were a substantial number of Y felony adjudications under extended juvenile jurisdiction.

Detective Rick Frisby of the Springdale Police Department testified that on June 18, 2013, he investigated a robbery at Brookhaven Apartments in Springdale. When he arrived at the scene, he found a Chevy Impala with gloves, a bloody backpack, a large log, and a brick in the vehicle. One witness related that he had seen three or four African American males



fighting with a Hispanic male. Two suspects were arrested that night, and they both implicated Nichols in the robbery. Nichols initially denied any involvement in the incident when questioned by Frisby, but he later admitted to kicking and punching the victim after the victim lost consciousness. However, Nichols, who was the only juvenile of the three suspects, told Frisby that the other suspects "started the whole thing" and that it was one of the other suspect's idea to rob the victim. Detective Frisby stated that Nichols smirked and laughed a little while he talked about the incident. Nichols denied that the brick found in the vehicle was used in the attack; he also wrote a letter of apology to the victim. Detective Frisby was unable to talk to the victim, a thirty-five-year-old man, at the time of the incident because he was airlifted for medical assistance due to being in a coma; the victim, who was struck in the face and upper body, remained in a coma from June to November. The victim was wheelchair bound when Detective Frisby spoke with him in January 2014, and he continued to suffer the effects of the injuries he had sustained in the incident.

It is within a prosecuting attorney's discretion to charge a juvenile in either the juvenile or criminal division of circuit court if a juvenile is at least sixteen years old when he allegedly engages in conduct that, if committed by an adult, would be a felony. Ark. Code Ann. § 9-27-318(c)(1) (Repl. 2009). On motion of the court or any party, the court in which the charges have been filed shall conduct a transfer hearing to determine whether to transfer the case to another division of circuit court. Ark. Code Ann. § 9-27-318(e). The moving party bears the burden of proving that the case should be transferred. *Z.T. v. State*, 2015 Ark. App. 282. The court shall order the case transferred to another division of circuit court only upon



a finding by clear and convincing evidence that the case should be transferred. Ark. Code Ann. § 9-27-318(h)(2). Clear and convincing evidence is the degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. *R.W.G. v. State*, 2014 Ark. App. 545, 444 S.W.3d 376. We will not reverse a circuit court's determination of whether to transfer a case unless that decision is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Id.*

Arkansas Code Annotated section 9-27-318(g) sets forth all of the factors the court shall consider in a transfer hearing:

(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;

(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;

(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;

(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

SLIP OPINION

(10) Any other factors deemed relevant by the judge.

The trial court is required to make written findings on all of the above factors. Ark. Code Ann. § 9-27-318(h)(1). However, there is no requirement that proof be introduced against the juvenile on each factor, and the trial court is not obligated to give equal weight to each of these factors in determining whether a case should be transferred. *K.O.P. v. State*, 2013 Ark. App. 667.

In finding that the State had demonstrated by clear and convincing evidence that the matter should remain in the criminal division of circuit court and not be transferred to the juvenile division of circuit court as an extended juvenile jurisdiction case, the trial court made the following findings:

> 1. That the offense of aggravated robbery is an extremely serious offense.
> 2. That the offense was committed in an aggressive, violent, and willful manner, with the Defendant admitting to striking as well as kicking the victim in the case.
> 3. That the offense was clearly committed against a person.
> 4. That the Defendant admitted his participation and culpability in the aggravated robbery by striking and kicking the victim.
> 5. That Defendant was previously placed on probation by the Benton County Circuit Court, which probation was revoked and thereafter Defendant was placed on probation for a second time.
> 6. That Defendant's probation was again revoked after testing positive for marijuana, being kicked off the school bus, and for wrongfully removing his electronic monitoring device.
> 7. That reasonable cause exists to believe that Defendant has committed the new offense of aggravated robbery while on probation.
> 8. That Defendant has conducted himself as an adult by using alcohol, using marijuana, and running away from home.
> 9. That available programs in the juvenile justice system would not successfully rehabilitate the Defendant.
> 10. That Defendant played a prominent role in the offense he and his co-defendants are alleged to have committed.

Nichols argues that the trial court's findings were clearly erroneous because the trial

SLIP OPINION

court failed to consider his history, his IQ, and the services he could be provided through the juvenile-justice system; he was one of three participants in the crimes and was the only juvenile; he had limited participation in the planning of the crime; and psychological evaluations indicated that his lack of judgment was probably the result of his low intelligence. He takes issue with the trial court's findings that he conducted himself as an adult by using marijuana and alcohol and running away, contending that these are not adult activities; that there were no programs in the juvenile-justice system that would successfully rehabilitate him, arguing that this finding ignores the testimony of Shelly Clingan; and that he played a prominent role in the offense, contending that his participation only occurred at the end when the alleged victim was unconscious.

The trial court did take Nichols's IQ into consideration, noting that it was 66. Nichols concedes that the crimes were serious and violent in nature, and they were committed against a person by a group of people. While he wants to point to the fact that the other two suspects were adults, he was no stranger to the court system himself, having been placed on juvenile probation on two occasions and having had that probation revoked both times. His past conduct provided an indication to the trial court that Nichols would be unlikely to have success in juvenile court for a third time. While using marijuana and running away may not be considered adult activities in some circumstances, that does not negate the findings that Nichols was a three-time offender who had committed serious offenses in a violent manner against a person, leaving that person seriously incapacitated. We cannot say that the trial court was clearly erroneous in denying Nichols's motion to transfer his case to juvenile court.



Affirmed.

ABRAMSON and BROWN, JJ., agree.

*Wallace, Martin, Duke and Russell, PLLC*, by: *Valerie L. Goudie*

*Leslie Rutledge*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.