

# ARKANSAS COURT OF APPEALS
## DIVISION II
**No.** CR–17–350

| | |
|---|---|
| SHUANDRELL HUBBARD<br>APPELLANT | **Opinion Delivered:** November 29, 2017<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTH DIVISION<br>[NO. 60CR-16-3702] |
| V. | |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE HERBERT T. WRIGHT, JR., JUDGE<br><br>AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Shuandrell Hubbard appeals the Pulaski County Circuit Court order denying his motion to transfer his case to the juvenile division of the circuit court. On appeal, he argues that the circuit court erred by (1) failing to make findings pursuant to Arkansas Code Annotated section 9-27-318(g)(1) (Repl. 2015); (2) finding that his culpability appeared to be equal to that of his accomplice; and (3) finding that the resources available in the juvenile division of the circuit court were not likely to rehabilitate him by the time he reached the age of twenty-one. We affirm.

On October 12, 2016, the State charged Hubbard in the criminal division of the Pulaski County Circuit Court with first-degree battery, terroristic act, aggravated assault, and possession of a handgun by a minor. On November 11, 2016, Hubbard filed a motion

to transfer the case to the juvenile division of the circuit court. The court held a hearing on January 9, 2017.

At the hearing, Michael Lundy, a detective for the Little Rock Police Department, testified that he responded to a call at the residence of Pablo Laredo on September 6, 2016. When Lundy arrived at the scene, Pablo reported to Lundy that while he was performing mechanic work on his car outside his residence, he felt something pressed against his head. An individual then said, "Excuse me, sir," and when Pablo turned around, he saw Hubbard pointing a firearm at him. Pablo grabbed a grease gun and started fighting Hubbard. He then noticed the shadow of a second individual who also had a gun. Pablo screamed for his brother, José Laredo, who was inside the residence. José helped Pablo subdue Hubbard, and they hog-tied him until the police arrived. During the altercation, Pablo sustained two gunshot wounds to his shoulder, a swollen eye, and various lacerations and abrasions to his body. However, Lundy testified that Pablo could not identify whether Hubbard or the second individual had shot him.

Dwayne Wilkins, a juvenile-probation officer, testified that Hubbard first entered the juvenile-detention facility in April 2016. He explained that probable cause was found for the arrest but that the court released Hubbard to his mother's custody with the conditions that he attend school, comply with a curfew, call his probation officer weekly, and refrain from using drugs and alcohol. He noted that Hubbard mostly complied with the conditions and that he called the probation office regularly, but not weekly. Wilkins explained that in June 2016, the court adjudicated Hubbard as a juvenile delinquent based on the April charges. Wilkins explained that after the June 2016 adjudication, the State charged Hubbard

again. However, the court did not find probable cause for those charges, and Hubbard was once again released to his mother's custody with the same conditions. He was then charged in the instant case. Wilkins testified that if the court transferred the case back to the juvenile division, Hubbard could receive counseling, commitment to the Department of Youth Services or the detention facility, random drug screens, and probation. He believed that Hubbard could be rehabilitated with these services.

Scott Tanner, the juvenile ombudsman, testified at the hearing. He explained that the State of Arkansas has developed rehabilitative services to help juvenile offenders develop skills to complete their education, enter the workforce, and comport behaviors. He referenced the C–Step program through the National Guard, the United Family Services program, and the Arkansas Dream Center. He noted that the Arkansas Dream Center is located in the neighborhood where Hubbard's grandfather resides and that the center offers structure, tutoring, counseling, and community mentoring.

Terri Hubbard, Hubbard's mother, testified that her son turned sixteen on July 25, 2016, and that he is immature. She believed that the rehabilitation program through the juvenile court could help him. She explained that he had been adjudicated as a juvenile delinquent on only one occasion and noted that he had been charged in another case but that probable cause was not found. She stated that in the case in which he was adjudicated delinquent, other juveniles were involved and that Hubbard had problems with peer pressure. She stated that she had discussed the instant charges with her son, and she believed his actions had resulted from peer pressure. She noted that the second individual involved

in the instant charges is older than Hubbard. She also testified that Hubbard had been diagnosed with attention deficit disorder.

Andrew Davis, the founder and executive director of the Arkansas Dream Center, testified that he has known Hubbard since 2009. He testified that Hubbard has potential but that he is a follower and has followed the wrong people. Davis explained that when Hubbard is released, he will begin the program at the Arkansas Dream Center and that the program will require him to be at the center from 8:00 a.m. to 6:00 p.m. every day. He noted that they would develop a plan for school but that the Little Rock School District probably would not allow Hubbard to return. He believed that Hubbard could be rehabilitated if given the opportunity. He admitted that about two or three years before the hearing, Hubbard had been attending the center daily. However, he explained that children do not grasp the consequences of their actions until they get older.

At the conclusion of the hearing, the court orally denied the transfer motion and made findings of fact pursuant to Arkansas Code Annotated section 9-27-318(g). On January 13, 2017, the court entered a written order. Hubbard timely appealed the order to this court. On appeal, Hubbard argues that the circuit court erred by (1) failing to make findings under Arkansas Code Annotated section 9-27-318(g)(1); (2) finding that his culpability appeared to be equal to his accomplice; and (3) finding that the resources available in the juvenile division of the circuit court were not likely to rehabilitate him by the time he reached the age of twenty-one.

We will not reverse a circuit court's decision denying a motion to transfer unless it is clearly erroneous. *Nichols v. State*, 2015 Ark. App. 397, 466 S.W.3d 431. A finding is

clearly erroneous when, after reviewing the evidence, the appellate court is left with a firm and definite conviction that a mistake was made. *Id.* As we have held many times, appellate courts will not reweigh the evidence presented to the circuit court. *See Clem v. State*, 351 Ark. 112, 90 S.W.3d 428, (2002).

Arkansas Code Annotated section 9-27-318(g) sets forth all the factors the court shall consider in a transfer hearing:

> (1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;
> (2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;
> (3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;
> (4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;
> (5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;
> (6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;
> (7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;
> (8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;
> (9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and
> (10) Any other factors deemed relevant by the judge.

The circuit court is required to make written findings on all of the above factors. Ark. Code Ann. § 9-27-318(h)(1). However, there is no requirement that proof be introduced against the juvenile on each factor, and the circuit court is not obligated to give equal weight to

each of these factors in determining whether a case should be transferred. *K.O.P. v. State*, 2013 Ark. App. 667.

Hubbard's first argument on appeal is that the circuit court failed to make findings under section 9–27–318(g)(1). He points out that the subsection requires the court to make a finding on the "seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court." However, he asserts that the circuit court made a finding only on the seriousness of the offense and did not address whether the protection of society requires prosecution in the criminal division. Specifically, the court found that "[t]he offenses charged, one count each battery in the first degree, terroristic act—occupiable structure, aggravated assault, and possession of a handgun by a minor—are serious offenses." Hubbard further claims that the testimony at the hearing showed that the juvenile division has programs to ensure the protection of society.

We hold that Hubbard has not established a reversible error on this point. Hubbard did not raise the section 9–27–318(g)(1) issue to the circuit court, and this court has declined to address the technical, statutory noncompliance of a circuit court's order when the appellant failed to make a timely request or objection that would have enabled the circuit court to correct the alleged deficiency. *J.A.C. v. State*, 2013 Ark. App. 513; *Williams v. State*, 96 Ark. App. 160, 239 S.W.3d 44 (2006). Further, even though the testimony showed that the juvenile division has programs that may ensure the protection of society, the State also presented testimony that Hubbard had participated in the Arkansas Dream Center program but had nevertheless later engaged in criminal activity. Accordingly, we affirm on this point.

Hubbard next argues that the circuit court's finding that his culpability appeared equal to that of the other individual involved is clearly erroneous. He points out that Detective Lundy testified that Pablo Laredo could not identify which individual had actually shot him and that his mother testified that he is immature and submits to peer pressure.

We disagree and hold that the circuit court did not clearly err in finding that Hubbard's culpability equaled that of his accomplice's. The evidence showed that Hubbard is sixteen years old and has a delinquent history. Further, Lundy testified that Pablo recounted that both Hubbard and the second individual had guns. Moreover, even though there was testimony that Hubbard is a follower, the circuit court could weigh that testimony against the circumstances surrounding the charges and Hubbard's past criminal conduct. Accordingly, we hold that the circuit court's finding was not clearly erroneous.

Hubbard lastly argues that the circuit court's finding that the resources available to him are not likely to rehabilitate him prior to his twenty-first birthday is clearly erroneous. He points out that the court found that "[t]here are facilities and programs available to the Defendant through the *juvenile division* of the Pulaski County [C]ircuit Court, but the Court finds they are not likely to rehabilitate the Defendant." (Emphasis added.) He asserts that section 9-27-318(g)(7) requires the court to consider "[w]hether there are facilities or programs available to the *judge* of the juvenile division of circuit court." (Emphasis added.) He claims that the judge of the juvenile division is not limited to the programs in the juvenile court. He further claims that the finding is clearly erroneous because there was evidence of an array of services that could rehabilitate him.

SLIP OPINION

We disagree and hold that the circuit court did not clearly err in finding that the resources available are not likely to rehabilitate Hubbard. Hubbard again failed to raise the statutory-noncompliance issue to the circuit court. Accordingly, the issue is not preserved for our review. *See J.A.C.*, 2013 Ark. App. 513. Further, even though there was evidence of rehabilitative services, the testimony also showed that Hubbard had received services in the past but later engaged in criminal conduct. Accordingly, we find no error on this point. Therefore, we affirm the circuit court's denial of Hubbard's motion to transfer his case to the juvenile division of the circuit court.

Affirmed.

MURPHY and BROWN, JJ., agree.

*Willard Proctor, Jr., P.A.*, by: *Willard Proctor, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.