2017 Ark. App. 694

**Tyrone Eugene RANDOLPH, Appellant**

v.

**STATE of Arkansas, Appellee**

No. CR–17–203

Court of Appeals of Arkansas,
DIVISION I.

Opinion Delivered December 13, 2017

Willard Proctor, Jr., P.A., Little Rock, by: Willard Proctor, Jr., for appellant.

Leslie Rutledge, Att'y Gen., by: Kathryn Henry, Ass't Att'y Gen., for appellee.

N. MARK KLAPPENBACH, Judge

Appellant Tyrone Randolph appeals the Pulaski County Circuit Court's denial of his motion to transfer his case to the juvenile division of circuit court. Randolph was charged in relation to an armed robbery of the Bank of America branch on Cantrell Road in Little Rock on the afternoon of January 6, 2016, during which the branch manager was shot. Randolph was facing charges of aggravated robbery, theft by force, and first-degree battery. His attorney asked that the matter be transferred to the juvenile division. After a hearing on the matter, the trial court denied the motion, and this appeal resulted. We affirm.

At the hearing in October 2016, a bank teller (Shunda Canada) testified that a man wearing a mask entered the bank and pointed a shotgun directly in front of her station, demanding money. Canada screamed, and another teller gave the robber $2,947, putting it in a plastic bag. The robber began to walk out of the bank, slowed down, made eye contact with the branch manager (Sam Lewis), and shot him with a sawed-off shotgun. Lewis was turning toward his office when he was shot in his right index finger and shoulder, and he testified that he thought that, had he not turned at that moment, the shotgun blast would have killed him.[1] The robbery was captured on the bank's surveillance cameras.

At the time the bank was being robbed, a woman in the area called the police, reporting that she had seen a man in a clown mask enter the bank and flee in a car that she was able to describe. The car belonged to Randolph's mother. That day,

---

1. Lewis was in the hospital for 3½ days and was off work for approximately 4½ months. Lewis had no functionality in his finger, which was almost shot off, and was facing at least two more surgeries to repair the bones and tendons in his hand. Lewis was also going to have follow-up visits to treat his hand and shoulder.

the police located Randolph, searched the house where he lived, and found the sawed-off .20 gauge Mossberg shotgun, several live rounds of ammunition, a spent round of ammunition, $2,436 cash in a purse, a mask, a hood, and a hacksaw. Store receipts showed that the gun and hacksaw had been purchased the day before the robbery.

Randolph was almost seventeen years old at the time of the robbery.[2] He admitted that he robbed the bank and that he had thought about committing the robbery for several days. Randolph explained that his girlfriend[3] had told him that she was pregnant, he did not have a job, he was not in school, and the robbery would get him money to support his family. Randolph's older brother Antonio Griffin was in jail for aggravated robbery. Randolph testified that he had been with his girlfriend when they went to Wal–Mart to purchase the gun, and he had his stepfather purchase the bullets and one of the two hacksaws he used to saw off the shotgun. He said that he later learned that his girlfriend had lied to him about being pregnant. Randolph expressed regret for his actions, especially his having shot the bank manager, although he claimed that he did not remember pulling the trigger.

His girlfriend (Jasha Howard) admitted buying the gun and that she was the driver of the getaway car. Additional evidence revealed that Randolph had completed only the ninth grade, that he was a poor student, and that he had had a difficult upbringing. Forensic mental-evaluation reports were entered into evidence, indicating that Randolph's primary diagnosis was conduct disorder and stating that he was competent to stand trial. Inmate-behavior-assessment forms dated in September and October 2016 recited that he was pleasant and cooperative in jail; that he wanted to help others by telling them not to make the same mistakes he had; and that he wanted to change his lifestyle, go back to school, and "do something with his life." Randolph's great uncle, grandmother, mother, and a family friend testified on his behalf, stating that he is a good person who needs a second chance.

The trial court rendered its findings at the conclusion of the hearing, reciting each of the ten statutory factors it considered and the evidence or lack of evidence as to each factor. A written order was filed on November 1, 2016, to reflect the trial court's findings on each statutory factor. The trial court found that the offenses were serious and committed in an aggressive, violent, premeditated or willful manner; that the offenses were against both person and property; that Randolph helped to plan this robbery and was the sole person who executed the plan; that he had no prior juvenile adjudications; that after considering his sophistication and maturity as determined by his home environment, emotional attitude, pattern of living, and desire to be treated as·an adult, Randolph was immature and unsophisticated; that he was age sixteen at the time of the crimes and presently age seventeen; that there were facilities and programs available through the juvenile system but that those were not likely to rehabilitate Randolph prior to his twenty-first birthday[4]; that he acted along with another

---

2. Randolph's date of birth is January 27, 1999. The robbery took place approximately three weeks before his seventeenth birthday.

3. Randolph's girlfriend was eighteen years old at the time of the bank robbery.

4. There was no evidence presented at the hearing on the issue of such facilities and programs. However, before the entry of the order on appeal, the State and the defense had stipulated to the availability of these facilities and the trial court's finding in a

individual in the commission of the crimes; that other written reports and materials relating to his mental, physical, educational, and social history were considered, specifically including a rereading of the forensic mental-health evaluations; and that he had "an abysmal home life." In closing, the trial court found that the case would remain in the adult division of circuit court and that Randolph did not present clear and convincing evidence to have the case transferred to the juvenile division. This appeal followed.

Randolph argues on appeal that the trial court clearly erred in denying his motion to transfer the case to the juvenile division, challenging two of the ten statutory factors. He contends in particular that (1) the trial court found that the offenses charged here were serious but clearly erred in failing to make written findings on whether the protection of society required prosecution in the criminal division of circuit court; and (2) the trial court clearly erred in finding that, although there were resources available to Randolph in the juvenile division, those resources were unlikely to rehabilitate the juvenile before his twenty-first birthday.

■ Arkansas law on this topic is well settled. It is within a prosecuting attorney's discretion to charge a juvenile in either the juvenile or criminal division of circuit court if a juvenile is at least sixteen years old when he or she allegedly engages in conduct that, if committed by an adult, would be a felony. Ark. Code Ann. § 9–27–318(c)(1) (Repl. 2015). On motion of the court or any party, the court in which the charges have been filed shall conduct a

transfer hearing to determine whether to transfer the case to another division of circuit court. Ark. Code Ann. § 9–27–318(e). The moving party bears the burden of proving that the case should be transferred. *Flowers v. State*, 2017 Ark. App. 468, 528 S.W.3d 851; *Z.T. v. State*, 2015 Ark. App. 282, 2015 WL 1952969. The court shall order the case transferred to another division of circuit court only upon a finding by clear and convincing evidence that the case should be transferred. Ark. Code Ann. § 9–27–318(h)(2). Clear and convincing evidence is the degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. *R.W.G. v. State*, 2014 Ark. App. 545, 444 S.W.3d 376. We will not reverse a trial court's determination of whether to transfer a case unless that decision is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Id.*

■ Arkansas Code Annotated section 9–27–318(g) sets forth the factors the trial court must consider and make written findings on at a transfer hearing. Those factors are:

(1) the seriousness of the alleged offense and *whether the protection of society requires prosecution in the criminal division of circuit court;*

(2) whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

prior hearing that those were not likely to rehabilitate Randolph. We note that Randolph's attorney failed to have the court reporter transcribe the prior hearing as part of the appellate record, and consequently, there is no abstract of this prior hearing. We could remand to supplement the record

and order rebriefing to include an abstract of that hearing. We choose not to do so in this instance because we are able to address the merits, given the stipulations. We caution counsel to include all pertinent and necessary materials in the future.

(3)  whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

(4)  the culpability of the juvenile, including the level of planning and participation in the alleged offense;

(5)  the previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;

(6)  the sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

(7)  whether there are facilities or programs available to the judge of the juvenile division of circuit court *that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday*;

(8)  whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

(9)  written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

(10)  any other factors deemed relevant by the judge.

(Emphasis added.) *See also R.W.G., supra.* Proof need not be introduced on each factor. *Nichols v. State,* 2015 Ark. App. 397, at 5, 466 S.W.3d 431, 433. The trial court does not have to give equal weight to each factor. *R.W.G., supra.* The Juvenile Code has several stated purposes, one of which is to protect society more effectively by substituting for retributive punishment, whenever possible, methods of offender rehabilitation and rehabilitative restitution, recognizing that the application of sanctions that are consistent with the seriousness of the offense is appropriate in all cases. Ark. Code Ann. § 9–27–302(3).

Randolph challenges the court's findings as to the first and seventh statutory factors and its conclusion that the factors weighed against transferring the case to the juvenile division. We are not left with a firm and definite conviction that a mistake was made in this case.

As to the first argument on appeal, Randolph contends that there lacked required specific written findings of fact on the entirety of the first statutory factor and that this mandates reversal. He agrees that written findings were rendered on the seriousness of the offenses but contends there were no written findings on whether the protection of society requires that the case remain in the adult-court system. Randolph adds that he had an abysmal home life; that he expressed remorse; and that extended juvenile jurisdiction would provide protection to society, such that denying transfer was erroneous. We disagree that there is clear error here.

The statute requires that the trial court issue findings of fact on "all of the factors," and the trial court clearly presented a written finding on the first factor. The trial court recited that Randolph's charges of aggravated robbery, theft by force, and first-degree battery were serious offenses, exposing him to significant years of imprisonment and a substantial fine. The trial court admittedly did not spell out that the protection of society required prosecution in adult criminal circuit court. Nonetheless, the trial court also found these were violent, aggressive, premeditated acts, and Randolph was fast approaching age eighteen. We do not require that an order contain "magic words" but instead determine if the trial court fulfilled its statutory duty to consider and render findings on all ten statutory factors. We note that this

case is distinguishable from *W.J.S. v. State*, 2016 Ark. App. 310, 495 S.W.3d 649, and *Brown v. State*, 2015 Ark. App. 570, 2015 WL 6378733, in which we held that an order containing a list of the section 9–27–318 factors with check marks beside them did not constitute adequate written findings. In contrast, in this case the trial court made specific findings on each statutory factor tailored to Randolph and the evidence before the trial court. We hold that the trial court fulfilled its statutory duty to make written findings on the first factor.

■ In the second argument on appeal, Randolph contends that the trial court erred with respect to the seventh statutory factor. The precise argument is that, although the trial court found that there were rehabilitative resources available, it was clearly erroneous to find that it was unlikely that those would rehabilitate Randolph before he turns twenty-one. We disagree that Randolph has demonstrated clear error on this point.

■ We acknowledge that Randolph presented witnesses on his behalf to testify that he is a good person who deserves a second chance, and it was agreed that he had an abysmal home life. Even if there were some factors tending to favor juvenile jurisdiction, however, the trial court weighed these factors against the other factors that favored jurisdiction in the criminal division of circuit court. *See Hubbard v. State*, 2017 Ark. App. 636, 535 S.W.3d 669; *Kiser v. State*, 2016 Ark. App. 198, 487 S.W.3d 374. Randolph was just three months shy of turning eighteen years old when the motion to transfer was denied. This was a premeditated bank robbery in which Randolph shot a person with a sawed-off shotgun. *See A.E.L. v. State*, 2013 Ark. App. 706, 2013 WL 6271853 (holding that there was no clear error in the trial court's finding that rehabilitative programs ⎰or facilities were not likely to rehabilitate seventeen-year-old A.E.L. who was charged with aggravated assault, felony fleeing, and first-degree criminal mischief). The trial court is not required to give equal weight to each of the statutory factors, and it may use its discretion in deciding the weight to be afforded each factor. *See Leach v. State*, 2016 Ark. App. 502, 504 S.W.3d 668. Thus, we hold that the trial court did not clearly err in denying Randolph's motion to transfer the case to juvenile court because it found that, after consideration of all the statutory factors, Randolph did not carry his burden to prove that the matter should be transferred to juvenile court.

Affirmed.

Whiteaker and Vaught, JJ., agree.