WAYMOND M. BROWN, Judge
Appellant Machun Clinkscale appeals from the order of the Pulaski County Circuit Court denying his motion to transfer his case to the juvenile division of circuit court. He argues on appeal that the trial court's denial of his motion to transfer was clearly erroneous. We affirm.
The Little Rock Police Department (LRPD) was dispatched to Sky Road Gas Station on January 1, 2017, around 2:00 p.m. concerning a shooting that had just occurred. Detective Roy Williams assisted in the investigation of the shooting in which Edmond Daniels was the victim. When he arrived, Daniels was in the back of the MEMS truck. Detective Williams was able to see that Daniels suffered gunshot wounds to the right side of his face and to his abdomen area. Anthony Williams, a witness, was placed in the back of a police car so that he could be interviewed. Anthony indicated that he was in the parking lot with Daniels at the time of the shooting. He stated that a burgundy Impala slowly came through the parking lot of the gas station and the passenger put a gun out of the window and fired several shots, hitting Daniels at least twice. Anthony identified "Moody" as the shooter. Detective Williams learned that Daniels's mother, Marsha Daniels, was also present at the gas station at the time of the shooting. He made contact with Marsha and her son, Edward. Marsha showed Detective Williams a photo of the person she saw inside the vehicle when it passed her vehicle in the gas station's parking lot. Edward was shown the picture and indicated that he knew who the person was. Edward contacted Anthony and they subsequently determined that the shooter was appellant, who went by the name "Moody." Daniels had to undergo surgery for his injuries. Detective Williams contacted Daniels after he was released from the hospital and Daniels stated that appellant was the one who shot him. Daniels also identified appellant's picture in a photo spread as the shooter.
On February 22, 2017, appellant was charged as an adult in the Pulaski County Circuit Court with unlawful discharge of a firearm from a vehicle and first-degree battery. Appellant filed a motion to transfer to juvenile court on March 7, 2017. The court held a transfer hearing on July 24, 2017.
Detective Williams testified that he works Violent Crimes for LRPD, and that he was working in that capacity on January 1, 2017. He stated that when he arrived on the scene, Daniels was already in the back of the MEMS vehicle. He said that he made contact with Anthony, who told him that "Moody" was the shooter. He testified that the gas station had video surveillance, and that he was able to obtain footage of the shooting. Detective Williams *412 stated that the video showed Anthony and Daniels together in the parking lot by the pumps. He said that a burgundy Impala could be seen slowly rolling through the parking lot and, at that time, Daniels was walking towards a white Camry. By the time Daniels made it close to the Camry, an arm came out of the passenger side window of the Impala and fired several shots. Daniels was struck and fell to the ground; however, he got back up and walked around before falling to the ground again. Anthony ran off, but he came back to try to help Daniels to the vehicle. Daniels collapsed and remained there until officers arrived. The Camry, driven by Marsha, left the gas station. Appellant was developed as a suspect after Anthony and Daniels identified him as the shooter. Detective Williams testified that he was not familiar with appellant before this shooting. However, he stated that during his investigation, he learned appellant had gang affiliations with the West Side Bloods-John Barrow. Several photos were introduced during Detective Williams's testimony that showed appellant throwing up gang signs and at least one photo showed a gun in appellant's right pocket. Detective Williams stated that one photo showed appellant with Adrian Clinkscale while Adrian was holding a gun. He testified that appellant was suspected to be involved in some other criminal activity with Adrian, specifically, committing terroristic acts, but no one could point appellant out in the photo spread.
On cross-examination, Detective Williams acknowledged that appellant had never been charged with committing a terroristic act. He stated that Marsha was able to see who was in the Impala although she was facing the opposite direction at the time of the shooting because the Impala passed her going the opposite way. He said that Marsha left quickly after the shooting. Detective Williams admitted that he did not look to see whether Daniels or Anthony had criminal records. He stated that a criminal-background check on appellant came up negative for prior arrests.
Dorothy Stevens, appellant's grandmother, testified that she was unaware of appellant's current address because his mother had just moved. She stated that appellant had lived with his mother his entire life. She said that appellant's mother "worked with pharmaceutical with the hospitals." She stated that appellant lived with his mother and two of his brothers. She testified that appellant's oldest brother lived with her. Stevens testified that she believed appellant's father was incarcerated. She described appellant as a respectful, obedient child who could cook and clean. She stated that this was appellant's first time being arrested and being away from his mother for an extended period. She opined that appellant is a person receptive to programs that would help him change. She stated that she had watched him participate in programs over the years and "do different things that would show that he could be rehabilitated if he were part of a program." She testified that she had never known appellant to have or carry a weapon. She stated that she worked as a mental-health paraprofessional and had come across people resistant to programs, treatment, and rehabilitation. She said that she had not seen that type of resistance in appellant. She continued,
If this case were transferred to the extended juvenile jurisdiction of the juvenile courts, and he were ordered to be a part of a treatment program, assessment, counseling, anger management, all those sorts of things, I believe that he would benefit from those. I believe he would actively participate in those.
With respect to education, I believe if he was placed in a position where he could get his education or at least finish his *413 education, that he would do that. One of his motives for getting out is he wants to get back in school this fall.
Stevens denied having any knowledge of appellant's gang affiliations. She stated that appellant wore a variety of colors, not just red.
On cross-examination, Stevens stated that she was aware that appellant had gotten suspended from school, but she did not know the reason. She identified appellant in the photos introduced during Detective Williams's testimony. She stated that Adrian is appellant's half-brother. She said that she was unaware if appellant was with Adrian when Adrian committed the terroristic act.
Wendy Ward, the librarian at Dunbar Magnet Middle School, testified that she had known appellant's family for fifteen years. She stated that she had taught appellant third and fifth grade at Wakefield Elementary, where she worked eleven years before going to Dunbar. She said that she maintained contact with appellant after he left Wakefield. She testified in pertinent part:
Based upon my contact with him, as far as his home environment, he always has lived with his mother. He is living as a juvenile. Based upon what I've seen, I have never seen anything to indicate that he has expressed a desire or even shown anything that he would want to be treated as an adult.
I absolutely believe that he would be receptive to programs, treatments, the sorts of services that may be available in juvenile court that might help to change, rehabilitate or help him in growing[.]
She stated that she was very close to appellant's family and that appellant was one of her best students. She said that he was never argumentative and that he did not talk back. She testified that she requested to have appellant in her third-grade class and that she asked to move to fifth grade so that she could teach appellant again. She said that appellant was placed in the gifted-and-talented program in third grade. She described appellant as a very smart and receptive person from a great Christian family. When presented with appellant's disciplinary record, Ward stated that her opinion of appellant was the same. She stated that she believed appellant could be changed if sent to juvenile court.
On cross-examination, Ward stated that she was unaware of appellant's "claimed gang affiliations," his disciplinary record, or that Daniels had identified appellant as his shooter. However, she said that this information did not change her opinion that appellant is a respectful and loving person.
The parties stipulated that if called, Scott Tanner would testify about services available in the juvenile division of circuit court. In lieu of calling him as a witness, the defense introduced prior testimony of Tanner as exhibit 1.
The court entered an order on August 1, 2017, denying appellant's motion. Appellant filed a timely notice of appeal on August 9, 2017.
Under Arkansas law, a prosecuting attorney has discretion to charge a juvenile sixteen years of age or older in the criminal division of circuit court if the juvenile has engaged in conduct that, if committed by an adult, would be a felony.[1] On the motion of the court or any party, the court in which the criminal charges have been filed shall conduct a hearing to determine whether to transfer the case to another division of circuit court having jurisdiction.
*414 [2] The moving party bears the burden of proving that the case should be transferred to the juvenile division of circuit court.[3] The trial court shall order the case transferred to another division of circuit court only upon a finding by clear and convincing evidence that the case should be transferred.[4] Clear and convincing evidence is that degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established.[5] We will not reverse a trial court's determination of whether to transfer a case unless the decision is clearly erroneous.[6] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed.[7]
At a juvenile-transfer hearing, the trial court is required to consider all of the following factors:
(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;
(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;
(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;
(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;
(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;
(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;
(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;
(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;
(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and
(10) Any other factors deemed relevant by the judge.[8]
The trial court is required to make written findings on all of the above factors.[9]
Appellant argues that the trial court's denial of his motion to transfer was clearly erroneous. More specifically, he contends (1) the trial court failed to make written findings required by Ark. Code Ann. § 9-27-318(h)(1) in that it failed to make written findings regarding factor six, (2) the court's finding regarding factor one is clearly erroneous, (3) the court's finding regarding factor seven is clearly erroneous, and (4) the court's finding regarding factor ten is clearly erroneous.
*415 As his first argument, appellant contends that the trial court failed to make the necessary findings for factor six as required by the statute. In its order denying appellant's motion, the court found that "[t]he Defendant has a poor home environment. His mother works, but his father is in prison. The unrebutted testimony was that Defendant is a member of the Westside Bloods, a street gang." Appellant argues that since the court failed to make a finding regarding his sophistication or maturity, we should reverse the trial court. However, appellant failed to raise this issue to the trial court, and this court has declined to address the technical, statutory noncompliance of a court's order where the appellant failed to make a timely request or objection that would have enabled the court to correct the alleged deficiency.[10] There is no indication that appellant apprised the trial court of the alleged deficiency; therefore, the issue is not preserved for appeal.
Next, appellant contends that the court's finding regarding factor one is clearly erroneous. He argues that the protection of society does not require that he be prosecuted in the adult division of court. Appellant was charged with unlawful discharge of a firearm from a vehicle and first-degree battery, both violent crimes. He shot the victim on the side of the face and in the abdomen area from the passenger-side window. Under these circumstances, we are not left with a firm conviction that the court made a mistake in finding that the protection of society required prosecution in the criminal division of circuit court.[11]
Third, appellant contends that the court's finding regarding factor seven is clearly erroneous. The court found that appellant could not be rehabilitated before his twenty-first birthday. Appellant points to testimony from his grandmother and his former teacher as proof that he can be rehabilitated. He also relies on the stipulated testimony of Tanner concerning available services. However, the court heard this testimony, weighed it, and ultimately found that appellant could not be rehabilitated before turning twenty-one. The court did not err in this determination.
Finally, appellant contends that the court's finding regarding factor ten is clearly erroneous. Appellant takes issue with the court's finding that "[o]n the same date as this hearing, the Court held a transfer hearing on the Defendant's half-brother, who is charged with similar activity." However, factor ten allows the judge to make written findings on anything else deemed relevant by the judge. Here, there was testimony that appellant was thought to be present when his half-brother committed terroristic acts, and there was at least one photo introduced that showed the brother holding a gun while appellant threw up gang signs with a gun in his front pocket. This factor gives a judge great discretion, and we cannot say that the court erred by including this in the written findings. Appellant is essentially *416 asking this court to reweigh the factors. Appellate courts will not reweigh the evidence presented to the circuit court.[12] Accordingly, we affirm.
Affirmed.
Glover and Vaught, JJ., agree.

Ark. Code Ann. § 9-27-318(c)(1) (Repl. 2015).

Ark. Code Ann. § 9-27-318(e).

Austin v. State , 2017 Ark. App. 114, 515 S.W.3d 633 ; Z.T. v. State , 2015 Ark. App. 282.

Ark. Code Ann. § 9-27-318(h)(2).

Z.T., supra.

Id.

Id.

Ark. Code Ann. § 9-27-318(g).

Ark. Code Ann. § 9-27-318(h)(1).

J.A.C. v. State , 2013 Ark. App. 513 ; Williams v. State , 96 Ark. App. 160, 239 S.W.3d 44 (2006).

As a subpoint he argues that the court failed to make the necessary statutory findings because the court used the word "favor" instead of "requires" when addressing factor one. As with his first point, appellant failed to raise this issue below so it is not preserved. Even if we were to reach this subpoint, we would hold that the court met the written requirements for factor one. We do not require that an order contain "magic words" but instead determine if the court fulfilled its statutory duty to consider and render findings on all ten statutory factors. Randolph v. State , 2017 Ark. App. 694, 537 S.W.3d 294.

Hubbard v. State , 2017 Ark. App. 636, 535 S.W.3d 669.