

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR–15–298

| | |
|---|---|
| | **Opinion Delivered** May 25, 2016 |
| ROBERT CHANDLER HARRIS<br>APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIRST DIVISION |
| V. | [NO. 60-CR-14-2919] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE LEON JOHNSON, JUDGE |
| | AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant Robert Harris appeals from the trial court's denial of his motion to transfer his case to the juvenile division of circuit court. He argues that the trial court's findings regarding Arkansas Code Annotated sections 9-27-318(g)(1), (5), and (7) were clearly erroneous. We find no error and affirm.[1]

On September 9, 2014, appellant was charged by information with capital murder and aggravated robbery. He filed a motion to transfer his case to the juvenile division of circuit

---

[1]This is the second time this case has been before us. We initially remanded it back to the trial court with instructions to enter findings consistent with the statute. *Harris v. State*, 2015 Ark. App. 565. In that opinion, we mistakenly asserted that the trial court was not required to make written findings on all of the factors based on our supreme court's holding in *Beulah v. State*, 344 Ark. 528, 42 S.W.3d 461 (2001). However, that is not the case under the statute as it is currently written. Accordingly, we now address the issues as presented to us by appellant.

court on September 12, 2014. A hearing on appellant's motion took place on January 9, 2015.

At the hearing, Detective Clint O'Kelly of the North Little Rock Police Department testified that he investigated the homicide of Mike Cook on July 20, 2014. He stated that Cook was found lying in the road, suffering from gunshot wounds. He said that Cook was transported to UAMS, where he was pronounced dead. Detective O'Kelly stated that officers located a witness, Lewis Brown, who informed them that he had seen two black males running on Campbell Street behind a truck and that one of them had a gun. Another witness, Brandon Bland, told officers that he had been with appellant and Jonathan Turner drinking and listening to music when Cook walked up and joined them. According to Bland, appellant was showing off his gun when Cook made a comment that appellant "took offense to." Detective O'Kelly stated that Bland informed him that after Cook unsuccessfully attempted to find a ride home, he began to walk. Bland stated that he went inside his house and that he later heard gunshots.

Detective O'Kelly testified that two other witnesses came forward stating that appellant had a gun on the date in question. According to Detective O'Kelly, Turner stated that appellant handed Cook his gun and that Cook acted as if he was going to keep it, but he finally gave it back to appellant. Turner initially stated that he was not present at the time Cook was shot; however, once confronted, he admitted that he was with appellant when appellant shot Cook. Turner stated that appellant indicated that he was going to take Cook's gun away from him and that appellant then pulled his gun on Cook, made Cook empty his

pockets, and then shot him. Turner indicated that he and appellant took off running and that appellant stopped, turned around, and fired more shots at Cook. Turner also told officers that a Ford truck pulled out on Campbell Street in front of them. Detective O'Kelly stated that officers located appellant and showed him a picture of Cook. According to Detective O'Kelly, appellant denied ever seeing Cook before. However, after speaking briefly with his father, appellant indicated that Turner was the one that shot Cook. Detective O'Kelly stated that at least three people saw appellant with a .40 caliber firearm, which had fourteen rounds in the clip and one in the chamber. He testified that two shell casings were found at the intersection of Campbell and Whippoorwill, and that eight casings were about 100 feet west of the intersection. Another casing was found in the tire of a vehicle belonging to the first witness located. According to Detective O'Kelly, all eleven casings were .40 caliber. Detective O'Kelly stated that another witness, Antonio Tillman, stated that he heard a set of gunshots, looked out of his window, saw the victim running and maybe limping, and then heard more shots. Detective O'Kelly testified that Cook was shot three times: once in the upper left back, once in the back right upper arm, and once in the left leg. He stated that it was safe to say that Cook died from the gunshot wound to the back.

On cross-examination, Detective O'Kelly stated that Turner was present at the time of the shooting. He testified that Turner initially lied to him. He also stated that Turner had charges pending for aggravated robbery unrelated to the incident in question. Detective O'Kelly said that outside of the case appellant was facing in juvenile court, he did not know of any other charges against appellant.

3

On redirect, Detective O'Kelly stated that appellant's date of birth is July 26, 1996, and that Cook was shot and killed six days before appellant's eighteenth birthday.

Scott Tanner testified on behalf of the defense at the transfer hearing. He stated that he coordinates the juvenile-ombudsmen division for the Public Defender Commission. Tanner stated that if appellant was committed to the Department of Youth Services (DYS), there would be resources available to help appellant complete high school or to obtain a GED, and that individual and group mental-health services and other therapies were also available. He said that the DYS facility was equipped to handle a defendant who was already eighteen and that for extended-juvenile-jurisdiction (EJJ) cases, they could maintain youths until their twenty-first birthdays. Tanner testified that it was his understanding that if the case was transferred and designated as EJJ, the juvenile court would retain jurisdiction until the defendant's twenty-first birthday. According to Tanner, the court would have to make a decision before a defendant turns twenty-one whether or not to maintain the defendant on probation and aftercare or to send him to adult probation or sentence him to the Arkansas Department of Correction. Tanner also stated that science has indicated that "the brain continues to develop until the age of twenty-five, particularly the prefrontal lobe, which provides the ability to guide impulse control and understanding long-term consequences." He testified that "[t]here is absolutely no debate that impulsivity, the delay gratification, and all those sort of things are not developed until you're twenty-five."

On cross-examination, Tanner stated that many of the programs in juvenile court used to rehabilitate juveniles do not take individuals once they turn eighteen. He said that is why

SLIP OPINION

the court would commit the juvenile to DYS. He testified that if the juvenile has already reached the age of nineteen by adjudication, he would only have approximately one-and-a-half years to be able to rehabilitate and also have a review hearing before the juvenile's twenty-first birthday. Tanner stated that the "earlier you can reach a juvenile and start performing these programs . . . the much greater likelihood that the juvenile will be rehabilitated. The older that they are when they start getting the programs, the chance of rehabilitation are not as great as if you get somebody that's 14, 15, or even younger." He said that he had no opinion as to the likelihood of rehabilitation of appellant.

On redirect, Tanner stated that the most likely scenario would be to place appellant in DYS "just to err on the side of caution." He testified that although resources would be limited to someone over the age of eighteen, there were still resources available.

Appellant's mother, Ebony Harris, testified that appellant had been in trouble only once at school prior to the charges he now faced. She said that appellant resided at home with her, his father, and his younger siblings. She stated that prior to his arrest, appellant worked with the after-school program at the Boys' and Girls' Club. According to Ebony, appellant never exhibited any behavior that would indicate that he was violent. She also testified that appellant never indicated that he wanted to be treated as an adult and that she still disciplined him when necessary.

Appellant's father, Robert Harris, III, testified that appellant did not have the financial capability to be on his own. He stated that, mentally, appellant was a "strong-minded young man." He said that appellant had never indicated that he wanted to be treated like an adult.

The court admitted the transcript from appellant's prior juvenile hearing involving an incident that took place at Sylvan Hills High School on January 28, 2014. At that hearing, Sergeant Jason Hopkins of the Sherwood Police Department testified that he was working security at a basketball game when a parent notified him about a fight taking place in front of the arena. He stated that as he exited the arena, he saw appellant and another individual on top of someone hitting him. He said that he identified himself as a police officer and grabbed appellant, but that appellant continued to go back toward the person he had been hitting. Sergeant Hopkins stated that he eventually had to handcuff appellant. According to Sergeant Hopkins, appellant subsequently stated "that he was BD[2] and he would bring a gun back and shoot all of the people there." He said that appellant made this statement more than once. He stated that as a result, appellant was banned from Sylvan Hills' property. Sergeant Hopkins said that appellant did not violate the ban. Tracy Allen, the principal at Sylvan Hills, reiterated Sergeant Hopkins's testimony concerning the threat made by appellant. According to Allen, appellant stated, "On BD. I'll get my gun and I'll come back up here and I'll blow all of this up. On BD, I'll shoot all of you motherfuckers." Allen stated that appellant was not a student at Sylvan Hills but that he went to Jacksonville High School. He testified that appellant was banned from the school and never came back onto the property.

The court orally denied appellant's motion to transfer. It entered an order denying the motion on January 9, 2015. Appellant filed a timely notice of appeal on January 12, 2015.

---

[2]Short for two different gangs: the Black Disciples and the Blood Disciples.

However, we remanded the case to the trial court for findings. The trial court entered an order on October 26, 2015, consistent with this court's directive. This appeal followed.

A prosecuting attorney has the discretion to charge a juvenile sixteen years of age or older in the criminal division of circuit court if the juvenile has allegedly engaged in conduct that, if committed by an adult, would be a felony.[3] On the motion of the court or any party, the court in which the criminal charges have been filed shall conduct a hearing to determine whether to transfer the case to another division of circuit court having jurisdiction.[4] The defendant, as the moving party, bears the burden of proving that his or her case should be transferred to the juvenile division of circuit court.[5] The court shall order the case transferred to another division of circuit court only upon a finding by clear and convincing evidence that the case should be transferred.[6] Clear and convincing evidence is the degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established.[7] We will not reverse a circuit court's determination of whether to transfer a case unless that decision is clearly erroneous.[8] A finding is clearly erroneous when, although there is evidence

[3] Ark. Code Ann. § 9-27-318(c)(1) (Repl. 2009).

[4] Ark. Code Ann. § 9-27-318(e).

[5] *See Magana-Galdamez v. State*, 104 Ark. App. 280, 291 S.W.3d 203 (2009).

[6] Ark. Code Ann. § 9-27-318(h)(2).

[7] *Lewis v. State*, 2011 Ark. App. 691.

[8] *Id.*

to support it, the reviewing court on the entire evidence is left with a firm conviction that a

mistake has been committed.[9]

At a juvenile-transfer hearing the circuit court must consider and issue written findings

on the following factors:

(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;

(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;

(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;

(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

---

[9]*Id.*

(10) Any other factors deemed relevant by the judge.[10]

The circuit court does not have to give equal weight to each factor.[11]

Appellant contends that the court erroneously found that the protection of society justified prosecution in the criminal division.[12] Appellant's argument focuses on the testimony of his parents and it is without merit. Appellant was charged with capital murder and aggravated robbery. His victim, Cook, was robbed by gunpoint and then shot. Cook suffered from three gunshot wounds, two of which appeared to be fired from behind. Our supreme court has held that a juvenile may be tried as an adult solely because of the serious and violent nature of the offense.[13] Here, both charges against appellant are crimes of a serious and violent nature. Therefore, we cannot say that the trial court clearly erred in finding that the protection of society justified prosecution in the criminal division.

Next, appellant contends that the trial court erroneously found that appellant's previous history justified prosecution in the criminal division.[14] A transcript from appellant's prior juvenile hearing was admitted into evidence. That evidence revealed that appellant was involved in a fight at a rival school and had to be physically restrained and removed from the scene. While being removed, appellant threatened to return with a gun and shoot people.

---

[10]Ark. Code Ann. § 9–27–318(g).

[11]*Neal v. State*, 2010 Ark. App. 744, 379 S.W.3d 634.

[12]Ark. Code Ann. § 9–27–318(g)(1).

[13]*See C.B. v. State*, 2012 Ark. 220, 406 S.W.3d 796.

[14]Ark. Code Ann. § 9–27–318(g)(5).

SLIP OPINION

We cannot say that the court clearly erred in finding that appellant's previous history justified prosecution in the criminal division.

Finally, appellant contends that the trial court erroneously found that appellant could not be rehabilitated and should be tried as an adult.[15] Appellant's argument relies on Tanner's testimony that there are programs available to appellant until he reaches the age of twenty-one. However, Tanner conceded that many of the programs were not available to appellant due to his age. Tanner stated that he could offer no opinion as to the likelihood of appellant's rehabilitation. Additionally, Tanner testified that under DYS, he would have only a little more than a year to review appellant's progress and to make a recommendation as to whether appellant should be sentenced as an adult. Based on this evidence, we cannot say that the court clearly erred in finding that appellant could not be rehabilitated and should be tried as an adult. Accordingly, we affirm.

Affirmed.

HARRISON and WHITEAKER, JJ., agree.

*Willard Proctor, Jr., P.A.*, by: *Willard Proctor, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Valerie Glover Fortner*, Ass't Att'y Gen., for appellee.

---

[15]Ark. Code Ann. § 9–27–318(g)(7).