Lastly, Despain presented the testimony of Dr. James Moneypenny. Dr. Moneypenny testified that he had reviewed the literature on adolescent brain development and opined that Despain had the brain development of a 13- to 14-year-old and, while not intellectually stunted, was immature in his development.[6]
In addition to the evidence from Despain, the court received evidence from the Arkansas State Police. Investigator Louis Imsler testified regarding his investigation, the incriminating statements given by *617 Despain and Taylor, and the search of Despain's home as outlined above.
After the hearing, the circuit court issued a written order denying the motion to transfer. Despain appeals the denial. He argues that the circuit court improperly disregarded the testimony of his expert witness, Dr. James Moneypenny, and erroneously determined that he was unlikely to be rehabilitated by his twenty-first birthday.
III. Standard of Review
In juvenile transfer proceedings, the court shall order the case transferred to another division of circuit court only upon a finding by clear and convincing evidence that the case should be transferred. Ark. Code Ann. § 9-27-318(h)(2). Clear and convincing evidence is the degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. Lewis v. State , 2011 Ark. App. 691, 2011 WL 5562773. Despain, as the moving party, bore the burden of proving that his case should be transferred to the juvenile division of circuit court. See Magana-Galdamez v. State , 104 Ark. App. 280, 291 S.W.3d 203 (2009).
In deciding whether to transfer, the circuit court must consider and issue written findings on the ten factors set forth in Ark. Code Ann. § 9-27-318(g) :
(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;
(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;
(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;
(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;
(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;
(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;
(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;
(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;
(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and
(10) Any other factors deemed relevant by the judge.
Ark. Code Ann. § 9-27-318(g).
We will not reverse a circuit court's determination of whether to transfer a case unless that decision is clearly erroneous. R.W.G. v. State , 2014 Ark. App. 545, 444 S.W.3d 376. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. Id. However, the circuit court does not have to give equal weight to each factor. Harris v. State , 2016 Ark. App. 293, at 9, 493 S.W.3d 808, 813.
*618 IV. Analysis
A. Expert Testimony
Despain first contends that the science involving the immaturity of the adolescent brain has been explicitly and fully accepted by the United States Supreme Court and that the circuit court therefore erred by improperly disregarding or disbelieving the testimony of Dr. Moneypenny in that regard. Despain's argument, however, misapprehends the substance of the court's ruling. With regard to Dr. Moneypenny's testimony, the court's order states:
F. The sophistication and maturity of the Defendant is of such a level that he should be treated as an adult.... The main defense evidence going to the sophistication and maturity level of the Defendant came from Dr. James Moneypenny, a practicing psychologist. He testified that he had worked on the case of the Defendant during the past 2 months during which he had reviewed school records, witness statements, research on adolescent brain development, and met with the Defendant on January 5, 2017 for 2 ½ to 3 hours. His research on adolescent brain development consisted of reading one article which contained summaries of 40+ researchers and then reading the abstracts of several of them. Based on this, Dr. Moneypenny concluded that the Defendant was behaviorally immature against the norm and that his development was below the norm. Dr. Moneypenny had the opportunity to listen to all the testimony presented. He said the most impressive testimony was the statements of the Defendant's former school bus driver, Marilyn Hunt, that she thought he could be talked into anything, and by his adoptive father that the Defendant was mature enough to drive alone to Oklahoma. Dr. Moneypenny thought this testimony supported his conclusion of the Defendant's immaturity. The Court questions why Dr. Moneypenny did not consider the testimony of the investigating officer to be impressive on the issue of maturity in light of the Defendant's statements concerning planning, execution, and motivation. The adoptive father, who has spent more than 3 hours with the Defendant, felt the Defendant was mature and responsible enough to drive alone to Oklahoma. The school bus driver knew the Defendant from riding her bus for 2-3 years and visiting her home on several occasions and from this contact opined he could be talking into anything; however, no examples were cited and the Court disagrees with her conclusion. Dr. Moneypenny seemed to have little basis for his conclusions and the Court disagrees with them.
As shown above, the court did not question the science of adolescent brain development. It merely questioned Dr. Moneypenny's understanding and application of that science to his evaluation of Despain-a credibility determination. Thus, the circuit court did not ignore or disregard the evidence as argued by Despain; it simply weighed the evidence differently than Despain desired. See Brown v. State , 2016 Ark. App. 254, 492 S.W.3d 126.
B. Likelihood of Rehabilitation
Next, Despain argues that the circuit court's finding that the resources available would not likely rehabilitate him before his twenty-first birthday was clearly erroneous. He asserts that the testimony of Juvenile Ombudsman Scott Tanner revealed the availability of resources under an EJJ designation. He argues that the General Assembly enacted EJJ to give the courts flexibility to deal with juveniles who have committed serious offenses, but who nonetheless demonstrate that they can be rehabilitated. He takes the position that *619 the circuit court disregarded Tanner's testimony. Again, this argument misapprehends the substance of the court's ruling. In regard to this issue, the court's order states:
G. There are facilities or programs available to the Judge of the Juvenile Division of the Circuit Court to rehabilitate juveniles, but they are unlikely to rehabilitate the Defendant before the expiration of his twenty-first birthday. In November of 2014, he had contact with the juvenile office concerning unwanted text messages to a female. A diversion was used which involved contact with the juvenile office and counseling. He did fine until February of 2015 when his father reported he had stolen $200.00 from his mother and was bullying his mother. The juvenile office worked with him with more restrictions. Later it was reported he was skipping school and a Family in Need of Services case was opened. He appeared before the Juvenile Court Judge on May 1, 2015 and was ordered to comply with court rules including counseling and school attendance. He attended counseling until sometime in December of 2015. He reported to his parents he was attending school and his counseling, but was not. In March of 2016, the parents reported he had stolen credit cards and a truck. He was scheduled for adjudication on May 20, 2016; the homicide occurred April 14, 2016.
Again, as shown above, the court did not disregard the testimony of Mr. Tanner. Instead, it focused on Despain's prior juvenile history and the steps taken which had failed to rehabilitate him thus far.
Additionally, Despain was charged with premeditated capital murder-a serious and violent crime-for purposely shooting his neighbor twice-once in the back and once in the head. Our supreme court has held that a juvenile may be tried as an adult solely because of the serious and violent nature of the offense. See C.B. v. State , 2012 Ark. 220, 406 S.W.3d 796.
Based on its consideration of the statutory factors, the court denied Despain's transfer motion. On the whole, we cannot find that this was clearly erroneous. See Harris v. State , 2016 Ark. App. 293, 493 S.W.3d 808 ("We will not reverse a circuit court's determination of whether to transfer a case unless that decision is clearly erroneous.").
Finally, there can be no EJJ designation unless the case is either already in the juvenile division or is transferred to the juvenile division. J.S. v. State , 2009 Ark. App. 710, 372 S.W.3d 370. Once the circuit court found that Despain's transfer motion should be denied, EJJ was no longer available. Id.
Affirmed.
Harrison and Hixson, JJ., agree.

There is also some evidence that Despain had a micropenis diagnosis and that his refusal to discuss this abnormality was further evidence of his immaturity.