RAYMOND R. ABRAMSON, Judge
Appellant Jaylon Holmes (DOB: 03-12-02) appeals from the order of the Pulaski County Circuit Court denying his motion to transfer his case to the juvenile division of the circuit court. He argues that the circuit court's denial of his motion to transfer was clearly erroneous or, in the alternative, that the court should have transferred the case and designated it as extended juvenile jurisdiction ("EJJ"). We affirm.
*897 Holmes was charged as an adult in the Pulaski County Circuit Court with two counts of aggravated robbery. His charges arose out of two separate aggravated robberies--one that occurred on October 15, 2017, and the other on October 18, 2017; Holmes was fifteen years old at the time. Holmes filed a motion to transfer this case to the juvenile division of the circuit court on January 17, 2018. The circuit court conducted a hearing on Holmes's motion on February 15, 2018.
Testimony at the hearing indicated that on October 15, 2017, two of Holmes's codefendants entered a Jimmy John's restaurant just before it closed and committed robbery. Both men had their faces covered, and one of them had a firearm. Surveillance video showed an older model Pontiac Sunfire leaving the scene. Holmes admitted to police that he and another codefendant waited inside the vehicle during the robbery.
On October 18, 2017, Holmes admitted to police that he and a codefendant had robbed a Metro PCS store at gunpoint and had stolen money and cellphones from the business. Holmes identified himself to police as the person depicted in the surveillance-video photographs wearing the Spider-Man mask pointing the gun at the employees. The Metro PCS employees saw the men leaving in a vehicle that matched the description of the one used to flee from the Jimmy John's restaurant on October 15. Within an hour of the Metro PCS robbery, police officers located and arrested Holmes and three codefendants at one of the codefendant's home. Inside the home, officers found two firearms matching those shown in the Metro PCS surveillance video, a Spider-Man mask, and new Metro PCS cellular phones.
Holmes's probation officer, Jennie Promack, testified that Holmes had been involved in the juvenile-justice system since 2014. While he had "passed on" to ninth grade in the fall of 2017, his record in eighth grade was terrible--including routine tardiness, unexcused absences, constant suspensions, and very poor grades. Promack testified that her records indicated that Holmes had thirteen school disciplinary sanctions and numerous suspensions. He was arrested for possessing a handgun on school property in early 2017, and the juvenile court ordered him to wear an ankle monitor. Holmes cut off the ankle monitor on May 19, 2017, and was arrested four days later on charges of theft by receiving and felony fleeing. The juvenile court also ordered Holmes to attend anger-management classes, but after he missed three classes, the referral was closed for noncompliance.
Promack testified that she referred Holmes for a drug-and-alcohol assessment, a psycho-social assessment, and entry into the Civilian Student Training Educational Program ("C-Step") as ordered by the juvenile court; however, Holmes was arrested on the charges in this case so he never received any of those services. Promack also testified that based on the individuals with whom Holmes associated and posts made on Facebook, she believed that Holmes was a member of a gang.
Under Arkansas law, a prosecuting attorney has discretion to charge a juvenile aged fourteen or fifteen years old when he or she engages in conduct that, if committed by an adult, would be aggravated robbery. See Ark. Code Ann. § 9-27-318(c)(2)(D) (Repl. 2015). On motion of the court or any party, the court in which the charges have been filed shall conduct a transfer hearing to determine whether to transfer the case to another division of the circuit court. Ark. Code Ann. § 9-27-318(e).
*898 The moving party bears the burden of proving that the case should be transferred. Z.T. v. State , 2015 Ark. App. 282, 2015 WL 1952969. The court shall order the case transferred to another division of the circuit court only upon a finding by clear and convincing evidence that the case should be transferred. Ark. Code Ann. § 9-27-318(h)(2). Clear and convincing evidence is the degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. R.W.G. v. State , 2014 Ark. App. 545, 444 S.W.3d 376. We will not reverse a circuit court's determination whether to transfer a case unless that decision is clearly erroneous. Id. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. Id.
Arkansas Code Annotated section 9-27-318(g) sets forth all the factors the court shall consider in a transfer hearing:
(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;
(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner.
(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;
(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;
(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;
(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;
(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;
(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;
(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and
(10) Any other factors deemed relevant by the judge.
Ark. Code Ann. § 9-27-318(g).
The circuit court is required to make written findings on all the above factors. Ark. Code Ann. § 9-27-318(h)(1). However, there is no requirement that proof be introduced against the juvenile on each factor, and the circuit court is not obligated to give equal weight to each of these factors in determining whether a case should be transferred. Neal v. State , 2010 Ark. App. 744, 379 S.W.3d 634.
Holmes argues that the circuit court erred by finding that (1) his culpability was great, (2) the resources available under the juvenile-justice system were unlikely to rehabilitate him, and (3) his level of intellectual development and maturity did not warrant transfer to the juvenile-justice system. However, based on the record before us, the circuit court's findings were not clearly erroneous.
Because of the serious nature of the charges alone-two counts of aggravated *899 robbery-there is clear and convincing evidence to support the circuit court's denial of appellant's motion to transfer. See, e.g. , Lofton v. State , 2009 Ark. 341, at 6, 321 S.W.3d 255, 259 ("a juvenile may be tried as an adult solely because of the serious and violent nature of the offense."). Holmes was an accomplice to the aggravated robbery of the Jimmy John's restaurant in which the employees were held at gunpoint. Two days later, it was Holmes himself who held up the employees of Metro PCS at gunpoint and stole phones and money from that business. Based on the evidence introduced at the hearing to substantiate the serious and violent nature of the charged offenses alone, the circuit court's decision to deny Holmes's motion to transfer was not clearly erroneous.
Holmes attempts to minimize his culpability based on the fact that he was fifteen years old and his codefendants were nineteen years old at the time of the crimes, but his age does not minimize his culpability in his role as an accomplice in the seriously violent and premeditated aggravated robbery of a Jimmy John's restaurant. "An accomplice, even of minor age, is responsible for the activities of his cohort." Bell v. State , 317 Ark. 289, 292, 877 S.W.2d 579, 581 (1994). Further, as the circuit court found, in the aggravated robbery of a Metro PCS, Holmes "chose to go in and hold a gun to a woman's head[,] ... an innocent woman who was standing there doing her job[.]" Holmes had also twice been adjudicated delinquent on very serious charges and was no stranger to the criminal-justice system. Given his aggressive and violent participation and previous involvement in the juvenile-justice system, the circuit court did not clearly err, as the age difference did not make him less culpable. See Nichols v. State , 2015 Ark. App. 397, at 6, 466 S.W.3d 431, 434 (rejecting argument based on age of codefendants given appellant's violent acts in the commission of the aggravated robbery and prior juvenile-delinquency adjudications).
Specifically, regarding factor seven and whether facilities or programs would be available to rehabilitate Holmes, the circuit court did not err by finding it was unlikely programs available in the juvenile-justice system would be effective to rehabilitate him. Holmes's antisocial behavior continued at school despite numerous interventions and sanctions. While on probation for the delinquency adjudication for possession of a handgun on school property, Holmes violated the juvenile court's orders by cutting off the ankle monitor; and four days later, he committed theft by receiving of a vehicle and felony fleeing. Holmes did not attend the anger-management classes as ordered by the juvenile court, and he did not receive the juvenile-justice-system services for which he was referred because he was arrested for the crimes charged in this case. Instead of emulating his older brother, he chose to model himself after what the evidence showed to be older gang members. The record reflects that Holmes was unlikely to be rehabilitated following his juvenile delinquency adjudications. Based on Holmes's pattern of behavior, the circuit court's decision is not clearly erroneous. See, e.g. , Box v. State , 71 Ark. App. 403, 406, 30 S.W.3d 754, 755-56 (2000) (affirming circuit court decision as "charges were part of a repetitive pattern of offenses, that past efforts at rehabilitation had proved unsuccessful, and that the pattern of offenses had become increasingly more serious"). As such, the circuit court did not clearly err by finding that it was unlikely he could be rehabilitated following the commission of the violent felonies charged in this case.
Finally, the circuit court did not clearly err by not giving greater weight to the evidence that Holmes came from an impoverished *900 background and that disruptions in his educational history affected his intellectual development and maturity. The circuit court considered Holmes's family's economic disadvantages and concluded that "even though he may [have been] raised in poverty, it still does not give him license to go somewhere and hold a gun to an innocent person's head and demand their money or property." Accordingly, the circuit court did not clearly err by not giving the evidence and its effects on his maturity and intellectual development greater weight. See, e.g. , Nichols , 2015 Ark. App. 397, at 6, 466 S.W.3d at 434 (rejecting an argument based on appellant's low IQ).
Here, it is evident that the circuit court heard the evidence, weighed it, reached its decision, and enumerated its conclusions in an order. The circuit court considered all the evidence on all the factors as required by the statute, and it was free to use its discretion in the weight afforded to each factor. D.A.S. v. State , 2010 Ark. App. 144, at 6, 2010 WL 502977. "That the court did not weigh one factor the way [the appellant] wanted it weighed does not make the court's decision clearly erroneous, nor does it necessitate reversal." Lindsey v. State , 2016 Ark. App. 355, at 9, 498 S.W.3d 336, 342. Therefore, we hold that the circuit court properly considered all the factors in Arkansas Code Annotated section 9-27-318(g) and did not clearly err in denying the motion to transfer.
We find Holmes's alternative argument that the circuit court erred in not transferring the case and designating it as EJJ to be without merit. To challenge an EJJ designation, an appellant's case must have first been transferred to the juvenile division. Although a party may request an EJJ designation and the EJJ designation hearing and transfer hearing may be conducted at the same time, there can be no EJJ designation unless the case is either already in the juvenile division of the circuit court or is transferred to the juvenile division. See Ark. Code Ann. § 9-27-318(e), (i), and (m) ; Ark. Code Ann. § 9-27-503(e) ; see also J.S. v. State , 2009 Ark. App. 710, 372 S.W.3d 370. Here, the circuit court found that Holmes's case should not be transferred to the juvenile division. Therefore, EJJ is not applicable in this situation.
The circuit court's decision to deny Holmes's motion to transfer the case to the juvenile division of the circuit court is not clearly erroneous; accordingly, we affirm.
Affirmed.
Harrison and Murphy, JJ., agree.