Cite as 2019 Ark. App. 459

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-19-127

| | | |
|---|---|---|
| | | **Opinion Delivered** October 16, 2019 |
| JOHNNIE DONSON | | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35CR-17-274] |
| | APPELLANT | |
| V. | | HONORABLE ALEX GUYNN, JUDGE |
| STATE OF ARKANSAS | | AFFIRMED |
| | APPELLEE | |

## LARRY D. VAUGHT, Judge

Johnnie Donson was charged with capital murder after Marcus Washington was fatally shot on January 4, 2017. Johnnie, born on February 12, 1999, was seventeen years old at the time of the shooting. He filed a motion to transfer his case to the juvenile division of the circuit court and for extended juvenile jurisdiction (EJJ) designation. After a hearing on the motion, the Jefferson County Circuit Court entered an order denying Johnnie's motion. On appeal, Johnnie contends that the circuit court clearly erred in denying the motion to transfer his case to the juvenile division.[1] We affirm.

---

[1]Johnnie does not challenge the circuit court's denial of his request for EJJ, conceding that there can be no EJJ designation unless the case is either already in the juvenile division of the circuit court or is transferred to the juvenile division. *Sharp v. State*, 2018 Ark. App. 255, at 7–8, 548 S.W.3d 846, 851 (citations omitted). Because the circuit court found that Johnnie's case should not be transferred to the juvenile division, any claim by him challenging the lack

At the hearing on Johnnie's motion, Detective Steven Rucker of the Pine Bluff Police Department testified that on January 4, 2017, he responded to a shooting at Tamika Sims's residence. There, Detective Rucker found Marcus in his vehicle fatally shot. The detective stated that officers at the scene found multiple shell casings on the ground and bullet holes in two vehicles (Marcus's and Tamika's) and in Tamika's home.

In his investigation, Detective Rucker obtained surveillance video that showed Johnnie driving a white Impala pulling into a gas station on January 4 around 1:11 a.m. While Johnnie was pumping gas, Marcus arrived at the gas station and pumped gas into his vehicle. Marcus entered the convenience store, and Johnnie drove away. According to Detective Rucker, the video next shows Joshua Donson (Johnnie's brother) and Dataevonne Tatum in a Ford Focus pulling into the gas station. They circled Marcus's vehicle, parked, and watched Marcus. Marcus left the gas station, and about thirty-five seconds later, the Ford Focus left the station.

Detective Rucker also obtained video footage from a nearby liquor store. The detective testified that in that video, numerous gunshots could be heard around 1:44 a.m. The detective stated that there was an initial burst of gunfire, a pause, and then a second round of gunfire. Detective Rucker further testified that the video showed Johnnie's white Impala being driven away from the scene of the shooting with its lights off, followed closely by the Ford Focus.[2]

---

of an EJJ designation is meritless. *Id.* at 8, 548 S.W.3d at 851 (citing *Lofton v. State*, 2009 Ark. 341, 321 S.W.3d 255); *see also Kiser v. State*, 2016 Ark. App. 198, at 11, 487 S.W.3d 374, 380.

[2]Detective Rucker testified that when they later located the Ford Focus, officers found bullet holes in it, and a shell casing was found inside the vehicle that matched a shell casing found at the scene of the shooting.

Isaiah Washington (Marcus's cousin) testified that he, Marcus, and two others were in Marcus's vehicle backed into the driveway of Tamika's residence when a white car drove by followed closely by a second vehicle whose occupants were shooting at Marcus's vehicle. According to Isaiah, both the vehicles stopped about twenty yards away from Marcus's vehicle, and then the occupants of both vehicles exited and started walking toward Marcus's vehicle shooting guns the entire time. Isaiah, who had known Johnnie before the shooting, said that he did not see Johnnie fire a weapon that night, but Isaiah could not affirmatively state that Johnnie was not present.

Gujuan Christmas testified that he had been in jail with Johnnie after Marcus's murder and that Johnnie discussed his involvement in the shooting. Johnnie said he and Jaylin Cobbs got into an altercation at a club with Marcus and Isaiah because Isaiah took Cobbs's gun. Johnnie said that he and his friends followed Marcus to find Isaiah and that he (Johnnie) shot at Marcus. On another occasion, Johnnie described the shooting to Gujuan but did not admit being one of the shooters. According to Gujuan, in every version of Johnnie's story, he was at the scene of the shooting.

In support of his motion to transfer, Johnnie presented the testimony of several witnesses. Johnnie's mother, Kanshia Collins, testified that growing up, Johnnie was an "angel child." She said that he was a nerd and had straight As in school, he regularly attended church, and he followed the rules of her house. She said that Johnnie started to change when he was around sixteen years old after his stepfather died and his brother Joshua was shot. Kanshia said that Johnnie started to smoke marijuana, hang around the wrong people, sneak out of her home, and stay out late. She said he is highly susceptible to peer pressure and is immature.

Aisha Shackelford testified that she had been Johnnie's supervisor at Taco Bell for about six months when he was sixteen. She stated that he was a good employee, had a good work ethic, was responsible and respectful, and had the maturity of a teenager. She said that she did not see him be violent or aggressive and that he was susceptible to negative influences in the community.

Brooke Digby, the coordinator of the juvenile-ombudsman division of the Public Defender Commission, testified that the juvenile brain is not fully developed, which is why the criminal-justice system treats juveniles differently. She stated that the purpose of the juvenile-justice system is to rehabilitate juveniles. She said that despite Johnnie's age (nineteen at the time of the hearing) and the capital-murder charge against him, there are rehabilitative programs within the juvenile system available to him. Brooke stated that if Johnnie is transferred to juvenile court and receives an EJJ designation, the juvenile court may retain jurisdiction over the him until he reaches twenty-one years of age. She stated that he could be committed to the Division of Youth Services (DYS) or seek admission into programs like Job Corps and Teen Challenge. She also said that under the provisions of EJJ, the juvenile court's retaining jurisdiction may also impose an adult prison sentence if the court makes a finding that the juvenile has violated an order of the court, has committed a new offense, or is not amenable to rehabilitation in the juvenile system. Brooke did not offer an opinion as to Johnnie's chances of being rehabilitated because she had not met him.

Johnnie's former youth pastor, Michael Jenkins, testified that Johnnie attended church regularly for a year in 2014; he was in the choir; and he was respectful, mild, meek, and humble.

4

Michael stated that Johnnie's maturity level was high for someone his age. Michael also stated that while he had not seen Johnnie recently, he believed Johnnie could be rehabilitated.

Kevin Crumpton, Johnnie's probation officer, testified that Johnnie was currently on probation after having been adjudicated delinquent on two felony drug charges and one misdemeanor fleeing charge stemming from an incident on January 10, 2017. While on probation, Johnnie had one positive drug screen for THC. However, Kevin testified that before January 2017, Johnnie had no charges. Kevin believed that juvenile rehabilitation is effective.

In the circuit court's order denying Johnnie's motion to transfer and for EJJ designation, the court summarized the hearing testimony in detail and made the following written findings:

1. Capital Murder is a serious offense as it is a Class Y Felony and protection of society requires that this charge be in the Criminal Division of Circuit Court.

2. The Court finds that the offense was committed in an aggressive, violent, and willful manner.

3. The Court finds the offense was against a person but not property. The Court notes that the actions [led] to loss of life of one person.

4. The Court finds the Defendant culpable.

5. The Court finds the Defendant has a limited juvenile history obtained immediately before his 18th birthday of Possession of a Controlled Substance (Marijuana), Possession of a Controlled Substance (Cocaine), and Fleeing.

6. The Court also finds the Defendant has a high level of sophistication and maturity.

7. The Court finds that there are **not** suitable juvenile programs and facilities to rehabilitate the juvenile prior to his 21st birthday.

8. The Court finds the offense was part of a group activity.

9. There were no written reports submitted on the juvenile's mental, physical, educational, or social history.

Johnnie appeals from this order.

Under Arkansas law, a prosecuting attorney has discretion to charge a juvenile sixteen years of age or older in the criminal division of the circuit court if the juvenile has engaged in conduct that, if committed by an adult, would be a felony. Ark. Code Ann. § 9-27-318(c)(1) (Repl. 2015). On the motion of the court or any party, the court in which the criminal charges have been filed shall conduct a hearing to determine whether to transfer the case to another division of the circuit court having jurisdiction. Ark. Code Ann. § 9-27-318(e). The moving party bears the burden of proving that the case should be transferred to the juvenile division of the circuit court. *Kiser v. State*, 2016 Ark. App. 198, at 2, 487 S.W.3d 374, 375. The circuit court shall order the case transferred to another division of the circuit court only upon a finding by clear and convincing evidence that the case should be transferred. Ark. Code Ann. § 9-27-318(h)(2). Clear and convincing evidence is that degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. *Kiser*, 2016 Ark. App. 198, at 2, 487 S.W.3d at 375. We will not reverse a circuit court's determination whether to transfer a case unless the decision is clearly erroneous. *Id.*, 487 S.W.3d at 375. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Id.*, 487 S.W.3d at 375.

At a juvenile-transfer hearing, the circuit court is required to consider all the following factors:

(1)     The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;

(2)     Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

(3)     Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

(4)     The culpability of the juvenile, including the level of planning and participation in the alleged offense;

(5)     The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;

(6)     The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

(7)     Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;

(8)     Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

(9)     Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

(10)    Any other factors deemed relevant by the judge.

Ark. Code Ann. § 9-27-318(g). Pursuant to Arkansas Code Annotated section 9-27-318(h)(1), a circuit court shall make written findings on all the factors set forth above. However, there is no requirement that proof be introduced against the juvenile on each factor, and the circuit court is not obligated to give equal weight to each of these factors in determining whether a case should be transferred. *Kiser*, 2016 Ark. App. 198, at 3, 487 S.W.3d at 376.

On appeal, Johnnie challenges the first, fourth, sixth, and seventh of the circuit court's statutory-factors findings. With regard to the first statutory factor, Johnnie argues that the State failed to present evidence to support the finding that the protection of society required that he be prosecuted in the criminal division of the circuit court. He claims the evidence shows that the EJJ statutory scheme would have allowed the circuit court to sentence him to the Arkansas Department of Correction as an adult if he was not rehabilitated prior to his twenty-first birthday. Citing the concurring opinion in *Otis v. State*, 355 Ark. 590, 142 S.W.3d 615 (2004) (Imber, J., concurring), Johnnie contends that the juvenile code suggests an intent and preference to focus on rehabilitation for serious offenders through juvenile jurisdiction and the provisions of EJJ.

In *Otis*, our supreme court rejected Johnnie's argument. There, the supreme court held that a juvenile charged with capital murder may be tried as an adult solely because of the serious and violent nature of the offense despite a lack of evidence that the protection of society demanded that he be tried as an adult. *Otis*, 355 Ark. at 607, 142 S.W.3d at 624; *see also Harris v. State*, 2016 Ark. App. 293, at 9, 493 S.W.3d 808, 812–13 (affirming the circuit court's finding that the protection of society justified prosecution in circuit court where the appellant was charged with capital murder and aggravated robbery, which are serious and violent offenses).

In the case at bar, the circuit court found that capital murder, a Class Y felony, is a serious offense. A juvenile may be tried as an adult solely because of this finding. *Otis*, 355 Ark. at 607, 142 S.W.3d at 624. Our supreme court has also held that the State is not required to offer proof as to each part of the statutory factors. *Id.*, 142 S.W.3d at 624–25. Therefore,

contrary to Johnnie's argument, specific proof that protection of society requires his charge be in the circuit court is not required. Finally, it can be inferred from the serious and violent nature of the offense that the protection of society demands that the juvenile be tried as an adult. *Id.*, 142 S.W.3d at 625. For these reasons, we hold that the circuit court did not clearly err in finding that the protection of society requires Johnnie's prosecution in the criminal division of the circuit court.

Regarding the fourth statutory factor, Johnnie argues that the circuit court erred in finding him culpable. He argues that there is a lack of evidence that he was involved in the planning of the incident and that the bulk of the evidence about his participation showed that he "at best" "drove a white Impala containing passengers who participated in the shooting." He relies on Isaiah's testimony that he would have recognized Johnnie if he was one of the shooters. Johnnie also calls into question the credibility of Gujuan because he is a jailhouse informant who testified for the State in hopes of receiving a favorable plea deal in his own capital-murder case. Essentially, Johnnie is asking this court to reweigh the evidence in his favor, which we cannot do. *Hubbard v. State*, 2017 Ark. App. 636, at 5, 535 S.W.3d 669, 672.

In the instant case, there was evidence that Johnnie planned and participated in the shooting of Marcus. According to Gujuan, Johnnie admitted that he and his friends followed Marcus, that the shooting was retaliatory, and that he (Johnnie) participated in it. In every version of Johnnie's stories to Gujuan, Johnnie was at the scene of the crime. Further, Detective Rucker testified—and the surveillance video confirmed—that Johnnie was driving the white Impala that was present at the time of the shooting. Isaiah testified that individuals exited that car and shot at Marcus's vehicle. Assuming Johnnie was merely the driver of the

9

white Impala present at the shooting incident, his culpability can be established by accomplice liability.[3] "An accomplice, even of minor age, is responsible for the activities of his cohort." *Holmes v. State*, 2019 Ark. App. 21, at 6, 569 S.W.3d 895, 899 (citing *Bell v. State*, 317 Ark. 289, 292, 877 S.W.2d 579, 581 (1994)). Therefore, regardless of whether Johnnie was a shooter or the driver of the white Impala, there is evidence of his culpability, and we cannot say that the circuit court clearly erred in making this finding.

Johnnie argues that the circuit court's finding that he has "a high level of sophistication and maturity," under the sixth statutory factor, was erroneous because the greater weight of the evidence contradicts the finding. He argues that his mother and his former supervisor testified that he lacks maturity and is susceptible to peer pressure. He relies on the testimony of Brooke, the juvenile-ombudsman coordinator, that the juvenile brain is not developed and that juveniles are susceptible to peer pressure, which indicates a lack of maturity.

While there is evidence that supports Johnnie's argument, there is evidence that supports the circuit court's finding. Johnnie's mother said that until he turned sixteen, he was a good student, obtained a GED, and was a regular church attendee. Johnnie's former pastor testified that Johnnie was a mature teen. His former supervisor testified that he was a good, responsible employee and was mature for a teenager. Again, Johnnie's argument asks this court

---

[3]Pursuant to Arkansas Code Annotated section 5-2-402(2) (Repl. 2013), a person is criminally liable for the conduct of another person if the person is an accomplice of another in the commission of an offense. A person is an accomplice if, with the purpose of promoting or facilitating the commission of an offense, the person aids, agrees to aid, or attempts to aid the other person in planning or committing the offense. Ark. Code Ann. § 5-2-403(a)(2) (Repl. 2013).

to reweigh the evidence in his favor, which we will not do. *Hubbard*, 2017 Ark. App. 636, at 5, 535 S.W.3d at 672.

Finally, Johnnie challenges the circuit court's seventh statutory finding that there are no suitable juvenile programs and facilities to rehabilitate him prior to his twenty-first birthday. He argues that Brooke testified about programs within EJJ that were available to him and that rehabilitation is possible before he turns twenty-one. Johnnie also relies on his probation officer's testimony that Johnnie could be rehabilitated.

The evidence shows that there are programs within EJJ available to a person of Johnnie's age (nineteen). This is not dispositive of the issue, however. *Kiser*, 2016 Ark. App. 198, at 11, 487 S.W.3d at 380 (stating that the fact that treatment options are available does not make the circuit court's finding to deny the transfer clearly erroneous). At issue in this case was whether the programs are readily available to Johnnie and whether there is sufficient time for him to be rehabilitated in these programs. Brooke was not sure if Johnnie would be accepted into the Job Corps or Teen Challenge programs, and she said that there is limited bed space in the DYS facilities. Brooke also stated that Johnnie would have, at most, a year and a half within the juvenile system. Finally, Brooke did not offer an opinion as to the likelihood of Johnnie's rehabilitation because she had not met him. Based on this evidence, we cannot say that the circuit court clearly erred in finding there are no suitable juvenile programs or facilities to rehabilitate Johnnie before his twenty-first birthday.

In sum, the circuit court considered all the evidence on all the factors as required by the statute, and it was free to use its discretion in the weight afforded to each factor. *Holmes v. State*, 2019 Ark. App. 21, at 8, 569 S.W.3d 895, 900. "That the court did not weigh one factor

11

the way [the appellant] wanted it weighed does not make the court's decision clearly erroneous, nor does it necessitate reversal." *Id.*, 569 S.W.3d at 900 (citing *Lindsey v. State*, 2016 Ark. App. 355, at 9, 498 S.W.3d 336, 342). Therefore, we hold that the circuit court did not clearly err in denying Johnnie's motion to transfer.

Affirmed.

VIRDEN and SWITZER, JJ., agree.

*Tinsley & Youngdahl, PLLC*, by: *Jordan B. Tinsley*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.